FEILD, BROWN et al. vs. DORTCH.

1. ATTACHMENT:　*When jurisdiction over attached property begins.*
The intrinsic power of the court over attached property originates with, and relates back to, the levy.

2. JURISDICTION:　*Consent can not give, but, etc.*
Consent can not give jurisdiction where none exists; yet, where the court has jurisdiction of the subject matter (as of property attached), and cer-tain conditions are made essential to its exercise, they may be waived. Orders made concerning the property within the general scope of the power of the court, and in furtherance of the design for which it was attached, may be made by consent; and consent may well be presumed where parties ought to object, and fail to do so.

3. SALE OF LAND UNDER EXECUTION :　*Sheriff not bound to sell in forty-acre tracts.*
*Sec.* 2681, *Gantt's Dig.*, which provides that lands be sold under execution in forty-acre tracts, is directory, and at the option of the owner. In the absence of instructions, the sheriff will exercise his sound judgment in making the sale.

APPEAL from *Phillips* Circuit Court.

Hon. J. N. CYPERT, Circuit Judge.

*Davis* and *Hanly*, for appellants.

*Tappan & Hornor*, contra.

EAKIN, J. Appellees, Dortch and wife, with others, on the nineteenth of March, 1877, brought an action of ejectment for certain lands, against divers parties in possession. They filed, as their claim of title, two sheriff's deeds, which showed that they had purchased the lands at a sale, made by order of the circuit court in a suit by attachment, in which William B. Dortch et al. were plaintiffs, and Cynthia H. Brown was defendant.

Cynthia H. Brown was, on her application, made defendant in this action, and claiming to be sole owner defended for the whole, the nominal defendants being her tenants.

The issues made by the answer, involved the validity of the order of sale in the attachment suit, and the sale under it. The court tried the case upon the law and the facts, sitting as a jury, held the deeds valid, and rendered judgment for plaintiffs. All the facts are properly brought upon the record by motion for a new trial, and by bill of exceptions. The defendants appealed.

It appears from the transcript of the old case of *Dortch et al. vs. Brown,* that the same was an action of assumpsit, commenced by attachment against Cynthia H. Brown (appellant in this case), as a non-resident, in the circuit court of Phillips county, on the second of September, 1867. The writ was executed by the sheriff, on the seventeenth of the same month, by attaching, with other lands, those involved in the present suit. The return, which was not filed until the fifteenth of April, 1868, shows further, that the defendant, Cynthia Brown, was not found.

Previous to this return, at the November term, 1867, on the twenty-first of December, the plaintiffs filed, as proof of publication, a notice signed by the sheriff, reciting the title of the case, the issuance of the attachment and the amount demanded in assumpsit, and warning the de-

fendant to appear " on or before the third day of the next court, to be held on the twenty-fourth day of November, 1867, there to demur or plead," etc. With this was filed the certificate of one of the publishers and proprietors of the " Southern Shield," a weekly newspaper, to the effect that the same had been published in said paper for two weeks successively—on the twenty-eighth of September, and fifth of October, 1867. Whereupon judgment by default was, on that day, rendered against the defendant, with directions for a writ of inquiry. This writ, at the same term, on the eighteenth of January, 1868, was duly executed, and, by verdict, damages were assessed at $8,000, for which a judgment was rendered.

In this judgment, no notice was taken of the lands. The sheriff's return upon the writ was made, as before stated, on the fifteenth of April following, and nothing more was done in the case until the nineteenth of December, 1870, when a petition was filed by the plaintiffs setting forth the judgment and the lands attached, and praying an order of sale.

The record recites that " on this day came said plaintiffs by their attorney, and the said defendant by her attorney," and that said petition was argued by counsel. The prayer was granted on condition of a bond, to be filed by plaintiffs, and on the twenty-third of December, 1870, the order of sale issued. No sale was made, and on motion of plaintiffs the order was renewed on the fifth of June, 1871.

On the twenty-second of November, 1871, the record says the parties came by their attorneys, and, it being suggested that by consent of both parties the sale had not been made, the order was renewed on motion of plaintiffs.

26

Feild, Brown et al. vs. Dortch.

On the twenty-seventh of November, 1872, there is a record entry to the effect that the parties came, by attorney, and reported that, by consent, no sale had been made, and it was agreed that the cause should be continued without prejudice, with renewal of the order of sale on the first day of May, 1873. In June, 1873, there was another suggestion of failure to sell, and renewal of the order. In December, 1873, there was a. continuance by consent; and again, on the twenty-fourth of February, 1874. On the nineteenth of January, 1875, the parties came by attorneys, and "by consent of parties, it is agreed that the order of sale may be renewed."

On the thirty-first of May following, the parties came by attorneys, and the plaintiffs presented to the court the sheriff's report of the sale of the lands to the plaintiffs in this case; which was approved, and the acknowledgment of the execution of the deed was made in open court, and ordered to be indorsed thereon. Another deed was executed by the sheriff after the time for redemption had passed, which was acknowledged before a notary, and recorded. These were the deeds filed with the complaint in the present action.

Upon the trial the plaintiff was allowed to introduce amendments to the original return of the attachment by the sheriff, and to his report of the sale, which amendments had been made by leave of court in the original case, after the present action was brought. The first amendment, added to the return as filed in April, 1868, a certificate of the sheriff that he had caused to be printed in the Southern Shield, "the number of times, and within the time prescribed by law," a statement of the nature and amount of the plaintiff's demand, and notifying the defendant, Cynthia H. Brown, that an attachment had been issued

against her estate, "and that unless she shall appear, by herself or attorney, on or before the third day of the next term of the court, to-wit: on the twenty-fourth day of November, 1867," that judgment will be rendered against her, etc. The sheriff further certified, that he had filed a copy of said publication, in open court, on the twenty-first day of December, 1867, amongst the papers in the suit, to accompany his returns, and as a part and parcel of it. The amendments made to the report of sale were for the purpose of showing that the land had been sold in tracts of 160 and 80 acres, and not *in solido*.

The statute regulating attachments, previous to the act of 1867, after prescribing the manner of attaching lands, tenements, goods, etc., provides that, "from and after the service of any writ of attachment, the property, money or effects, so attached, shall remain in the officer's hands or possession, and be by him secured, to abide the event of the judgment of the court." It was further provided that "the service of *the summons* in the writ of attachment, against the defendant (if he be found in the county) shall be made by reading the same to him in his hearing, or presence, or delivering him a copy thereof." No provision was made for constructive service of the summons by the sheriff, but it was provided that, "if the defendant shall not, on or before the third day of the term (or sooner, if the court shall adjourn before that time,) appear and plead, or otherwise answer, to the plaintiff's action, the court shall order that a publication be made, containing a statement of the nature and amount of the plaintiff's demand, and notifying the defendant that an attachment has been issued against his estate, and that unless he shall appear, by himself or attorney, on or before the third day of the next term, stating the time the court will meet, that judg-

ment will be entered against him, and his estate sold to satisfy the same."

It was made the duty of the plaintiff in the action to have this notice inserted two weeks, successively, in some newspaper printed in the state, within such time as the court should prescribe.    See *Gould's Digest, ch. 17, secs. 8, 9, 10, 24, 25.*

Upon failure of defendant to appear, the plaintiff was entitled to judgment by default, as in other cases of default, with a jury to assess unliquidated damages.   It was provided that judgment should be entered therefor, as in other cases.   *Ib., secs. 31, 32.*

It is obvious, from a contemplation of these provisions, that there is a broad distinction between the service of the attachment, and that of the summons to the defendant. The first is the effective mode of bringing the corpus of the property—the *rem.* sought to be affected—within the grasp and jurisdiction of the court.    That jurisdiction attached immediately on the service of the attachment, from which time the property passed under the control of the court, and out of that of the defendant.    The service of the summon was still necessary to give jurisdiction of *the person* of the defendant, and to enable the court to bind him with regard to his property generally.    It was a matter of justice, even with regard to the property attached, that the defendant should have notice of the peril in which it stood.    The law provided amply for such notice, and any disregard of its provisions to that end would be matter of error, to be corrected by any direct or appellate proceeding.    But due and proper notice to the defendant, however important, was not jurisdictional, so far as the property already attached might be affected.    That was already in the power of the court.    Of necessity, the court must order

concerning it some way. The return of the sheriff was necessary, to show that the jurisdiction had attached; but, when shown, it related to the time of the levy. This view of the case is ably presented by the supreme court of Ohio, in *Paine's Lessee v. Mooreland, 15 Ohio, 435,* cited in *Drake on Attachment, sec. 409.* See, also, *Cooper v. Reynolds, 10 Wall. (U. S.), 308.*

Amendments to the attachment law were made by act of March 17, 1867. (*Pamphlet Acts, p. 294.*) Some slight alteration was made in the manner of attaching lands, and it was provided that if the defendant could not be found in the county, it should, at once, be the duty of the officer to make publication in some newspaper, if there should be sufficient time between the levy of the attachment and the term of the court. If there should not be time, the court was to order the publication as formerly. In case the publication were made by the officer it was made his duty to attach a copy of it to his return, "together with his certificate that the same was printed and published in the paper (naming it) the number of times and within the time prescribed by law, which shall be deemed a sufficient service upon the defendant, and upon which the court may proceed to hear the cause, and give judgment according to the right of the matter."

This statute was evidently in extension and aid of the remedy by attachment, and to avoid unnecessary delays in levying the same, and giving notice to the defendant. There is nothing in it to change the terms or conditions of jurisdiction. As before, jurisdiction of the property was acquired by the levy. and of the person, by actual service; whilst, with regard to the disposition of the property, certain regulations with regard to notice, were prescribed, which it would be such error to disregard as would render

the proceedings subject to reversal and appeal, or writ of error.

The attachment upon which the proceedings in the case of *Dortch et al. v. Mrs. Brown* were founded, was properly issued, and duly levied upon the lands. That brought them within the jurisdiction of the court. At the time the court rendered judgment by default, it does not appear affirmatively that the court was advised of the levy. But the court did have proof before it, in the certificate and affidavit of the publisher of the Shield, to show that the sheriff had done his duty in causing the notice to be given, although it then appeared that he had failed in his duty, by neglecting to file a copy of the notice, attached to his return, with his own certificate that publication had been made. The proof by the publisher's affidavit was legal, in accordance with the general law regarding legal advertisements, as it provided before and at the time of the passage of the act of 1867. (See *Gould's Digest, ch. 8, sec. 1.*) It is to be observed that, by force of the act of 1867, the copy attached to the return, with the sheriff's certificate, " shall be deemed sufficient service upon the defendant, and upon which the court may proceed to hear the cause." But there is nothing in the act to repeal the general law which had been in force, regulating the practice in the state since 1839, and, by which, " where any notice or advertisement shall be required by law, or the order of any court, to be published in any newspaper, the affidavit of the printer, or publisher, with a copy of such advertisement annexed, stating, etc., * * * *shall be evidence* of the publication therein set forth."

It was a gross error in the circuit court to have rendered a judgment by default at the November term, without the sheriff's return showing the levy, and without his

certificate of the publication, and a copy. The court should have required the sheriff to do his duty, and taken no action until he had done so. But the court did then *actually* have jurisdiction of the property attached, as shown by relation on the coming in of the return, and did have before it evidence of which it could take cognizance that the sheriff, notwithstanding his failure to return the same, had given the notice required by law. It was apparent, certainly, that he had made a mistake in naming the twenty-fourth of November, instead of the twenty-fifth, as the first day of the term—a manifest clerical error, for which judgment should have been suspended; but none of these matters affect the *jurisdiction* of the court over the property brought under its control by the levy.

The personal judgment, which it has been the practice to render in attachment cases, where there has been no actual service, and which seems to have been contemplated by the statute, is only such in form, and is used merely as an ascertainment of the amount for which the property attached is to answer. No execution issues upon it against the general effects of the defendant. Before the Civil Code, a special execution issued against the property seized, and, since the Code, the practice has been for the court to order the sale and apply the proceeds to the debt as ascertained. The intrinsic power of the court over the property originates with and relates back to the levy. It is not derived from the judgment ascertaining the debt, but antedates it. The *regularity* of the exercise of the power depends upon an entire conformity with the statutory directions. Without that strict observance, there is error, to be corrected upon the appeal, or writ of error. But we can not, nor is the court in this case called upon to

pronounce the proceedings utterly void, and of no effect, *ab initio*.

For whilst the court had jurisdiction of the property, however erroneous the ascertainment of the debt may have been, the defendant, at a subsequent term, appears in the case in open court, and makes no objection to the former proceedings, which are, after her appearance, recited upon the record. She is present when, adopting the ascertainment of damages, the order of sale is made. She saves no exceptions, makes no motion to set any proceedings aside, and takes no appeal. She appears again, term after term, by her attorney; consenting to continuances and postponements of the same, until the same is finally made and confirmed. There was sufficient jurisdiction over the property, and the defendant, during these subsequent proceedings, to give them vitality, unless corrected upon appeal. What was not rightfully done, was merely error, and can not be collaterally questioned.

The doctrine of estoppel plainly applies. Had the defendant, upon her appearance, objected to the judgment by default, the court might have disregarded it, and opened the case for her answer and defense. The lien of the plaintiffs upon the property attached, would have remained, and might have been properly enforced. She did not object, but appeared during several years, consenting to continuances, and making no opposition to renewals of orders of sale, and actually assenting to the last order. No objection was made to the report of the sale, nor to the deed acknowledged in open court by the plaintiff. It is too late, now, to make the objection that the orders of the sale were without jurisdiction, and void.

Whilst consent can not give jurisdiction where none exists, yet, where the court has jurisdiction of the subject-

matter (as of property attached), and certain conditions are made essential to its exercise, they may be waived. Orders made concerning the property, within the general scope of the powers of the court, and in furtherance of the designs for which it was attached, may be made good by consent, and consent may well be presumed where parties ought to object, and fail to do so. The practice is not to be encouraged, of allowing parties to stand mute, seeming to assent, and reserving objections to be used collaterally. It was well said, in the case of *Evans & Black v. Percifull, 5 Ark., 424,* that: "If a person complains of the proceedings of a court, he should take the proper steps, within the prescribed time, to reverse them; and his failure to do so, is the highest evidence of his intention to acquiesce in them. It amounts, absolutely, to acquiescence." It is only where the court has no jurisdiction at all over the property or the person that the proceedings can be collaterally treated as null.

The sale by the sheriff was made in tracts of 160 and 80 acres. This, it is contended, was in violation of *sec. 2681 of Gantt's Digest,* which provides that, "in all sales of real estate under execution, when the tract or tracts to be sold contain more than forty acres, the same shall be divided, as the owner or owners may direct, into lots containing not more than forty nor less than twenty acres," and be sold accordingly. This is plainly directory, and at the option of the owner. It would be highly mischievous to compel the officer, at all times, in the absence of instructions, to sell in this manner. Property might be often sacrificed, and always would be, in the case of plantations having a few acres essential to the enjoyment of the whole, whether for timber, or locations for buildings. It is sufficient to give the defendant the privilege of the division, if

he should regard it as desirable, and, for the rest, the sheriff, in the absence of instructions, must exercise his sound judgment in making the sale. If he should commit any abuse of his discretion, the ready remedy is in the hands of the circuit court, upon the return of the sale. There is nothing in this case to indicate that the property was sold in any injudicious manner, or failed to bring its value. The order of sale was by consent, and the owner was well advised of the time, and might have attended to insist upon a division into forty acre tracts, if desirable. If she had meant to object, she could have done so on the return of the sale.

The sale was not void, and can not be collaterally attacked. The deeds were *prima facie* evidence of their contents, and showed title in the plaintiffs.

We find no material error in the finding, and judgment of the court. Let the same be affirmed.