HORTON v. GILLESPIE.

Opinion delivered January 11, 1926.

1. PARDONS—CONSTRUCTION.—Pardons are to be liberally construed in favor of the pardonee, there being a presumption in favor of their validity.

2. PARDONS—VALIDITY—MODE OF RAISING QUESTION.—The question as to the validity of a pardon may be raised in a proceeding by habeas corpus where the pardonee asserts his immunity from the consequences of the judgment from which the pardon attempts to absolve him.

3. PARDONS—ACT REGULATING APPLICATIONS.—Acts 1903, p. 270, (Crawford & Moses' Dig., §§ 3370-3374) regulating applications for pardons, is a reasonable exercise of legislative powers under art. 6, § 18, of the Constitution, and does not substantially deprive the Governor of his power to grant pardons.

4. PARDON—GRANT BY ACTING GOVERNOR—AMENDMENT.—Where a pardon granted by the President of the Senate, as acting Governor in the absence of the Governor from the State, failed to state that it was issued without application being made by any attorney or paid representative, as required by Crawford & Moses' Dig., § 3374, the acting Governor had no authority to amend the pardon by inserting such recital after his authority to act as Governor had ceased.

5. PARDONS—PUBLICATION OF APPLICATIONS.—The requirement in Crawford & Moses' Dig., § 3370, that a certificate of publication of an application for pardon be filed in the Governor's office before it can be considered is mandatory, and a pardon issued without complying therewith is invalid.

6. PARDONS—PUBLICATION OF PARDON—AUTHORITY OF COURTS.—The courts may inquire whether the requirement in Crawford & Moses' Digest § 3370, that a certificate of publication of an application for pardon be filed in the Governor's office before the application can be considered, was complied with.

7. STATUTES—PASSAGE—FAILURE OF EXECUTIVE TO RETURN BILL.— Where a bill was passed by both houses of the Legislature, and an enrolled copy was presented to the Governor, and the original bill contains the indorsement of the Governor's failure to return the bill within five days, required by Crawford & Moses' Dig., § 4971, except that it lacks the signature of the Secretary of state, but the enrolled copy contains both the indorsement of such failure and the Secretary's signature, *held* that the bill became a law.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; reversed.

*H. W. Applegate*, Attorney General, and *Brooks Hays*, Assistant, for appellant; *Tom W. Campbell*, *Will G. Akers* and *Frank Strangways*, of counsel.

*Rogers & Robinson*, for appellee.

*R. W. Robins* and *J. T. Sifford, J. E. Gaughan, Elbert Godwin* and *T. J. Gaughan*, amici curiae.

SMITH, J. On October 29, 1925, appellee was confined in the State Penitentiary, serving a sentence which had not then expired. On that date, the Governor of the State being absent therefrom, the functions of Governor were being discharged by the President of the Senate as acting Governor, and, while so acting, he granted appellee a "full and free pardon." After reciting appellee's conviction, and the time of his sentence, it was recited in

the pardon that, "by virtue of the authority vested in me by the Constitution of the State of Arkansas I do hereby grant to the said W. W. Gillespie a full and free pardon. of, for and from the said offense of grand larceny of which he was convicted as above set forth, fully pardoning and absolving him of and from the said judgment and all the effects and consequences thereof." This pardon was duly filed in the office of the Secretary of State, and was recorded there in the record which that officer is required to keep.

Upon the return of the Governor of the State to the State he ordered the recapture of appellee, who, pursuant to the pardon, had been released from the custody of the penitentiary authorities, and, upon appellee being retaken by the penitentiary authorities, he brought habeas corpus to obtain his release. The chancery court held the pardon was valid, and directed that appellee be discharged from custody, and from this decree the warden of the penitentiary, the officer having appellee in custody, has appealed.

It was shown by appellee at the hearing from which this appeal comes that, on the day before the hearing, and while the Governor of the State was within the State and discharging the functions of his office, a notation was made on the pardon by the President of the Senate reading as follows: "I, S. B. (Pete) McCall, hereby state that this pardon to W. W. Gillespie was granted by me without application being made to me by an attorney or paid representative of W. W. Gillespie." This notation did not appear on the pardon when it was granted by the acting Governor, and does not appear in the pardon as recorded in the office of the Secretary of State.

The question presented for decision is, of course, the validity of the pardon.

It may be first said that pardons are to be liberally construed in favor of the pardonee, and that there is a presumption in favor of their validity. There is some conflict in the authorities as to the extent to which this

presumption is to be indulged and as to the character of the proceedings in which the question of its validity can be raised, but we think this question can be raised in a proceeding by habeas corpus where the pardonee asserts his immunity from the consequences of the judgment from which the pardon attempts to absolve him. It may be said, in this connection, that much of the apparent conflict in the authorities arises out of the language of the provisions of the Constitutions of the different States on the subject of pardons.

It appears that in the Constitution of the United States and in the Constitutions of all of the States provision is made whereby this right may be exercised. These provisions vary widely, and the value of any particular decision depends on the similarity of the Constitutions construed to our own.

The most elaborate opinion on the subject to which our attention has been called is that of *Jamison* v. *Flanner,* 116 Kan. 624, 228 Pac. 82, 35 A. L. R. 973. The opinion in this case by the Supreme Court of Kansas evidences the most exhaustive examination of the subject of the pardoning power, and in the opinion it was stated that this was done because of "the loose notion which sometimes prevails that the pardoning power is an executive power, to be exercised by the Governor in his discretion, and that no other official or department of the government can interfere with it," but the review of the cases there made, both State and Federal, shows incontrovertibly that, as was there said, this "is so only when made so by the Constitution."

The provision of our own Constitution on the subject, which is similar to that of the State of Kansas, is found in § 18 of article 6, and reads as follows: "In all criminal and penal cases, except in those of treason and impeachment, the Governor shall have power to grant reprieves, commutations of sentences and pardons after convictions, and to remit fines and forfeitures, under such rules and regulations as shall be prescribed by law."

The remainder of this section of the Constitution need not be quoted here, but it may be said that the last sentence of this section of the Constitution requires the Governor to communicate to the General Assembly at every regular session each case of reprieve, commutation, or pardon, with his reasons therefor, stating the name and crime of the convict, the sentence, its date, and the date of the commutation, pardon or reprieve. This provision contemplates that a record of some kind shall be kept whereby this information may be supplied for the use of the General Assembly.

At the 1903 session of the General Assembly of this State an act was passed entitled, "An act to regulate applications for pardons." Act 154, Acts 1903, page 270. It reads as follows:

"Section 1.   The Governor is hereby prohibited from considering or granting any application for pardon, or remission of forfeiture of bail bond, until there is filed in his office a certificate of the county clerk, or the affidavit of two persons known to be credible, that the application for such pardon or remission of forfeiture has been published as hereinafter provided.

"Section 2.   In applications for pardon in all cases of convictions for felony, and the offenses of wife-beating, unlawful carrying of weapons and the unlawful sale of liquors, the application setting forth the grounds upon which the pardon is asked, together with a list of the signers or petitioners uniting in the request for pardon, shall be published for two insertions in a weekly newspaper, if one be published therein, in the county where the conviction was had, or if the conviction was had in a county other than that in which the offense took place, then in the county where the offense was committed, in addition to the county where the conviction was had.

"Section 3.   In all cases of conviction for offenses other than those above mentioned, the publication of the intended application shall be made by posting the application, containing a statement of the grounds upon which

the pardon is asked, as well as a list of the signers to any petition asking that the same be granted, in front of the usual entrance door of the courthouse of the county or counties, as above provided, for the period of ten days prior to the presentation of such application to the Governor.

"Section 4.   In all cases where it is made to appear to the satisfaction of the Governor that the person or persons interested, or concerned in any way, in the preparation or presentation of such application as attorney, agent or otherwise, have become so interested therein, and are actually rendering services in the prosecution thereof without fee, or the contract therefor to be afterwards paid or secured, and that the person whose pardon is asked, or relatives upon whom he can call for assistance in promoting his application, are not financially able to pay the expense of such publication, then he shall have the discretion to consider and grant such application without requiring the proof of publication herein provided for.   And the Governor, acting upon his own motion, or being prompted thereto by the result of investigations made at his instance, shall have the right to grant a pardon in any case without the publication provided for herein; but all such pardons so granted by the Governor shall state on the face of the certificate thereof that the same was granted by the Governor without application therefor being made to him by any attorney or paid representative of the person pardoned."

Section 5 imposes penalties upon persons presenting applications for pardons, etc., without complying with the provisions of the preceding sections.   See Crawford & Moses' Digest, §§ 3370-3374.

We set out the act in full because it has never been construed by this court, and it is necessary to consider it in its entirety to determine:   (a) its constitutionality; (b) the extent to which the power to pardon has been restricted; and (c) the applicability of the provisions of the act to the facts in this case.

The portion of § 18 of article 6 of the Constitution of 1874 set out above comprising the first sentence of that section is substantially identical with the provisions on that subject found in the previous Constitutions of the State, except that of 1868.

It is apparent, of course, that the power to pardon is conferred on the Governor by the Constitution except in cases of treason and impeachment, and that it was not essential that any legislation be passed to make this power effective. In the absence of legislation the Governor might have exercised the power conferred in any manner he pleased, and might have prescribed any rules or regulations concerning its exercise which he thought would be helpful to him. But the Governor was not given the absolute power to grant reprieves, commutations, or pardons, but was given this power "under such rules and regulations as shall be prescribed by law."

Legislation which denied the right to pardon except in cases of treason and impeachment, or which so hampered the right as to make the power substantially unavailing, would be void as an abridgment of the power conferred. But the very sentence of the Constitution which conferred the power also gave the Legislature the right to regulate its use.

This limitation has been frequently recognized and declared. At page 161 of Cooley on Constitutional Limitations (7th ed.) there is a note which reads: "The power to pardon offenders is vested by the several State Constitutions in the Governor. It is not, however, a power which necessarily inheres in the executive. *State* v. *Dunning,* 9 Ind. 20. And several of the State Constitutions have provided that it shall be exercised under such regulations as shall be prescribed by law. There are provisions more or less broad to this purport in those of Kansas, Florida, Alabama, Arkansas, Texas, Mississippi, Oregon, Indiana, Iowa and Virginia."

In the early case of *Baldwin* v. *Scoggin,* 15 Ark. 427, this court said: "The framers of our State Constitution have entrusted the pardoning power to the Governor, but

thought proper to preserve to the Legislature the right to regulate its exercise.'' In that case it was also said that the failure of the Legislature to regulate the exercise of the power would be rather an indication of confidence in the sound discretion of the executive than of a disposition to deny him the right to exercise the prerogative. It was there further said: ''We are of the opinion therefore that the Governor has the power to remit fines under the provision of the Constitution above copied; and, until this power is regulated by law, may exercise it according to his own sound discretion.''

In the still earlier case of *Ex parte Hunt*, 10 Ark. 284, a pardon was granted which contained the condition that the pardonee should depart without delay from the State. At that time there was a statute giving the Governor the right to grant a pardon on condition that the pardonee should depart from the State and not return (§ 3375, C. & M. Dig.). The pardon to Hunt stipulated only that he should ''depart without delay,'' but did not state that he should not return, as the statute authorized the Governor to provide. It was insisted that the pardon was void because it did not recite the condition that the pardonee should not return. The court disposed of this contention by saying: ''By comparing the conditions annexed to the pardon in this case with these provisions of the law, it will at once be seen that the executive clemency was exercised under his general discretionary power, not this latter special statutory clause. This is evident, because the terms annexed to the pardon are clearly within the power conferred to grant pardons prescribing his own terms, and cannot be made to apply to the latter clause for the obvious reason that the statute having specifically defined the conditions, terms, and penalties for a violation of that clause, the executive has no discretion in regard to such punishment, and, when he designs to act under it, must adopt its provisions. The fact therefore that he did not conform to this latter statute must be taken as strong evidence that he did not intend doing so. If he did, however, and has

inadvertently omitted part of the provisions of the law in the condition annexed to his pardon, we are not at liberty, by presuming what his intention might have been, to impose other and different terms upon the convict than the language used imports. Penal laws are ever construed strictly and in favor of liberty. (*United States* v. *Wilson & Porter,* 1 Bald. C. C. R. 78) ; and pardons are to be construed most favorably to the convict. 4 Black. 401 ; 1 Chit. Cr. Law 772.''

In other words, the right of the Legislature to prescribe regulations, and the duty of the Governor to follow them, were declared, but, inasmuch as the Legislature had not then attempted to exercise its right to regulate in all cases, the presumption was indulged that the Governor had acted pursuant to his general power, which gave him the right to impose conditions, and not pursuant to the statute which exercised a part only of the power of regulation conferred on the Legislature by the Constitution. We shall later see that the act of 1903, which is now the law, is much more comprehensive in the matter of regulating the exercise of this power by the Governor.

The case of *State* v. *Nichols,* 26 Ark. 74, was one in which the nature of the power to pardon and the right of the Legislature to regulate was thoroughly considered. After discussing the nature of the Constitution of a State and of the restrictions imposed by the Constitution of the United States, it was said: ''So long as the people do not infringe upon the power already delegated to the general government, they are fully authorized to deposit the power in such branches as to them may seem best. To illustrate: They had the right to withhold all pardoning power from any one of the three branches (of government) ; or, on the other hand, they had the right to vest the pardoning power in either the legislative or judicial branches of the government.

''The executive no more represents the sovereignty of the State than either one of the other branches of the

State Government. The pardoning power no more vests in the Governor, by virtue of his position, than it does in the judicial branches of the government, when the Constitution is silent.'' It was there further said that ''the chief duty of the executive is to see that the laws are executed, and, where the power to dispense with the execution of the law is given him, it should not be extended by implication. The power of dispensing with the law and its penalties partake more of a legislative than of an executive character.''

It is argued, however, that, inasmuch as the case of *Baldwin* v. *Scoggin, supra,* was decided while the Constitution of 1836 was in effect, the force of that decision is destroyed by the differences between our present Constitution of 1874 and our first Constitution of 1836. The difference is that a comma appeared after the word ''conviction'' in the Constitution of 1836, whereas in the Constitution of 1874 a semicolon appears after the word ''conviction,'' and it is argued that the effect of this punctuation was to change the meaning of the Constitution so as not to give the Legislature any right to prescribe regulations as to applications for pardons ''in all criminal and penal cases.''

We concur, however, in the view expressed by counsel for the State in their brief that the framers of the Constitution would not have relied upon a mere change in punctuation to effect an entirely different policy in a matter of this importance, and we are of the opinion that this slight change in punctuation does not warrant us in departing from the construction given the earlier Constitution.

We discussed the effect of this change of punctuation in the case of *Hutton* v. *McCleskey,* 132 Ark. 391, where we said: ''The fact that a semicolon follows the word 'conviction,' instead of a comma, as in the similar clause in the Constitution of 1836, cannot be treated as altering the meaning of the sentence. If we failed to so interpret the whole sentence, it would confine the concluding phrase, 'under such rules and regulations as shall be

prescribed by law,' entirely to the preceding words concerning the remission of fines and forfeitures, and exclude the power of the lawmakers to prescribe rules and regulations concerning reprieves, commutations and pardons, a power which was clearly recognized by this court in the case of *Baldwin* v. *Scoggin, supra.''*

We conclude therefore that the act in question is constitutional, and that the power of the Governor to pardon is not absolute, but is subject in its exercise to such regulations as the Legislature may see proper to impose and which do not substantially deprive the chief executive of this power.

It is apparent that the regulations of the act of 1903 are simple and can be easily complied with. An analysis of the act readily demonstrates this.

By § 1 of the act the Governor is prohibited from granting pardons until there is filed in his office a certificate showing that the application for the pardon has been published as in the act provided.

By § 2 it is provided that applications for pardons in cases of conviction for felony, wife-beating, carrying weapons, and the unlawful sale of liquor, shall be published for two insertions in a weekly newspaper, if one be published, in the county where the conviction was had, and that, if the conviction was not had in the county where the offense was committed, publication should be made in both counties.

By § 3 it is provided that in all cases of conviction for offenses other than those mentioned in § 2 of the act the publication may be made by posting the notice therein required on the door of the courthouse.

Appellee was convicted of a felony, and the provisions of § 2 would therefore apply in his case; but the undisputed testimony shows, indeed it is an admitted fact, that no attempt was made to comply with the requirements of that section, and that no proof of publication of any kind was ever filed in the Governor's office. While we do not take judicial notice of individual par-

dons, we do know judicially that proof of publication of applications for pardons which are not made under § 4 of the act are filed, or are required to be filed, in the Governor's office, and the affirmative and undisputed showing has been made that there was no such filing in the matter of appellee's application.

It is provided in the act, however, that pardons may be granted in certain cases without complying with either the second or the third section of the act. These exceptions are contained in the fourth section of the act.

The first exception is where it is made to appear that the persons concerned in the presentation of the application are rendering service without fee or a contract for compensation to be thereafter paid or secured, and that neither the person for whom the pardon is asked nor any relative upon whom he might call for assistance is financially able to pay the expense of such publication, in which cases the Governor may consider and grant the application without requiring proof of publication.

Section 4 further provides that the Governor, acting upon his own motion, or being prompted by the result of an investigation made at his instance, shall have the right to grant a pardon in any case without the publication being made under either § 2 or 3 of the act. After enumerating the exceptions stated above, when publications shall not be required, it is further provided in § 4 that "all such pardons so granted by the Governor shall state on the face of the certificate thereof that the same was granted by the Governor without application therefor being made to him by any attorney or paid representative of the person pardoned."

There is nothing in this act which substantially deprives the Governor of the pardoning power, for, to summarize its provisions, applications may be considered and granted to offenders of one class on the publication of a notice in a newspaper, and pardons may be granted to others not embraced in this first class by posting a notice, but, if notice is not published in either way, the Governor may grant pardons, whether moved thereto by the repre-

sentations of others or by an investigation made by himself, provided, in all cases where publication is not made in one of the two ways, he shall state on the face of the certificate that it was granted by him without application therefor being made to him by any attorney or paid representative of the person pardoned.

This statute was enacted under the authority of and pursuant to the provisions of the same section of the Constitution which gives the Governor such right to pardon as he has at all, and it must therefore be construed as being mandatory, and any pardon which does not substantially comply with the requirements of the act must be held to be void.

It is pointed out that the pardon granted appellant states on its face that it was granted without application being made by any attorney or paid representative, and it is insisted that this recital should conclude the whole matter. It appears, however, as an undisputed fact, that this recital was placed on the pardon by the President of the Senate at a time when he was not acting as Governor. His authority to act had therefore ceased, and, if the purported pardon which he had issued and delivered was not valid during the time he was acting as Governor, nothing that he might do after he had ceased to be clothed with the powers of that office could give validity to it.

It is finally insisted that we have no right to inquire whether the statute was complied with or not, that is, that it was the exclusive function of the Governor to determine that fact, and that the grant of the pardon imputes a finding which is conclusive of the fact that the statute was complied with, even though the finding is now shown to have been erroneously made. We are cited to the old case of *Davis* v. *Gaines*, 48 Ark. 370, in which it was held that the court would not inquire whether proof of publication of intention to introduce a local bill had been given after the same had been passed by the Legislature, and it is insisted that, unless we indulge the

same presumption here, we are in the attitude of applying one rule to the legislative department of the Government and a different rule to the executive head.

We do not think, however, that we are doing this. It was not held that the provision of the Constitution in regard to notice of intention to introduce a local bill is directory merely and may be disregarded by the Legislature. In the case of *Booe* v. *Road Imp. Dist.*, 141 Ark. 140, we had occasion to review the case of *Davis* v. *Gaines, supra*. There was a majority and a dissenting opinion in that case, but it was agreed in both opinions that the provision of the Constitution in regard to notice was mandatory, and the majority disapproved language appearing in the *Davis* v. *Gaines* case which they construed as holding that the Legislature might, if it saw proper so to do, disregard the provision concerning notice entirely. It was the view of the dissenting judges that such was not the meaning of the decision, and that what was meant and had been decided was that the legislative determination that notice had been given was conclusive, so that it was the opinion of all the judges that the constitutional direction in regard to notice was mandatory. The Booe case and the cases cited in it make it plain how this conclusion was reached. It was pointed out that the Constitution did not require the proof of notice to be spread upon the journal of either House or that any other record be kept to evidence the fact that publication was made, and that, this being true, and it being the duty of the Legislature to determine in some manner satisfactory to itself that notice had, in fact, been given, and that, as this duty was imposed upon the Legislature, it would be conclusively presumed that the Legislature had discharged the duty imposed upon it by the Constitution and had ascertained that notice had been given, and that this finding would not be reviewed unless, as was pointed out in the Booe case, it was made to appear from some fact of which we could take judicial notice that the requirement in regard to giving of notice could not, as a physical fact, have been complied with.

Unlike the failure of the Constitution to provide that the Legislature should preserve in some way evidence that notice of intention to introduce a local bill had been given, the act of 1903 regulating pardons does contain that provision. The condition precedent is imposed by the first section of the act that there shall be filed in the Governor's office a certificate of the county clerk, or the affidavit of two credible persons, that notice of the application has been made in accordance with the provisions of the act hereinbefore set out and discussed.

Now, the word "filed", as used in this section, in legal terminology, has a fixed and well understood meaning. "A paper or document is said to be 'filed' when it is delivered to the proper officer and lodged by him in his office." "In the sense of the statute requiring the 'filing' of a paper, it is 'filed' when delivered to, and received by, the proper officer to be kept on file. The word carried with it the idea of permanent preservation of the thing so delivered and received that it may become a part of the public record." These are among the definitions collated in 2 Words & Phrases under the word "File", where numerous authorities are cited. That this is the correct meaning of the word "filed" is recognized by all courts and lexicographers. In addition to the authorities collated in Words & Phrases, *supra,* see 25 C. J. 1124, § 4, "D", and numerous cases cited in note; Bouvier's, Anderson's, and Black's Law Dictionaries, and cases there cited; Webster's and Funk & Wagnalls', *verbo* "File."

Unless and until this requirement is met, the Governor is prohibited from considering or granting an application for a pardon except as stated in § 4 of the act, and, if the pardon is granted pursuant to this exception, he must state on the face of the pardon itself that the same was granted without application being made to him by any attorney or paid representative of the person pardoned, so that if there had been publication that fact was required to be evidenced by the filing of the application in

the office of the Governor, and if there were no notice, that fact should be evidenced by the recital which the Governor was required to make on the face of the pardon itself.

We have said that it was an undisputed fact that no proof of publication was filed in the Governor's office, and, as it appears that the notation that no paid representative had made application for the pardon was not placed on the pardon while the President of the Senate was acting as Governor, it follows that the pardon was not issued in the manner provided by law, and is therefore void as such.

The decree of the chancery court will therefore be reversed, and appellee will be remanded to the custody of the warden.

McCulloch, C.J., and Hart, J., dissent.

McCulloch, C.J. I maintain that the conclusion of the majority is erroneous for two sufficient reasons: (A), that the statute regulating the manner of presenting petitions for pardons is, so far as it affects the power of the Governor, merely directory, and that his failure to require observance of the statute does not invalidate a pardon; (B), that, even if the statute be held to be mandatory, the courts, in testing the validity of a pardon, must indulge the conclusive presumption that the Governor has correctly found and decided that the statute has been complied with.

In the first place, the statute bears all the earmarks of a merely directory provision, and none of the *indicia* of a peremptory command. Nor does the Constitution itself authorize the Legislature to place conditions or restrictions upon the power of the Governor. The authority conferred is to regulate, not to hinder or restrain. Any mandatory provision on the subject which would operate as a restraint upon the Governor is void. The authority conferred on the lawmakers is to regulate by giving directions to the Governor as to the method of granting pardons and to provide punishment for others who violate the requirements. This the statute under considera-

tion has done, and no more. In that view, the statute is valid, otherwise it is void. If the Governor abuses the power vested in him by the Constitution, he may be called to the bar of the Senate for impeachment, but his acts are not void.

The statute does not declare that a pardon granted without complying with the terms of the statute is void. It merely prescribes punishment for offenders who present petitions for pardons without complying with the statute.

A statute formerly in force in this State prohibited foreign insurance companies from doing business here without conforming to certain specified legal require- ments and prescribing a punishment by fine for so doing, but this court decided that contracts made by such com- panies without complying with the statute were not void. *State Mut. Fire Ins. Assoc.* v. *Brinkley,* 61 Ark. 1. In disposing of the question, the court in that case said:

"It will be observed that, though penalties are im- posed in this act upon the persons or corporations doing the things therein prohibited without first complying with its requirements, it does not make void the contracts made by the insurance companies without such compliance either as the corporations named therein, or the policy holders in such companies.   *   *   *   The insurance con- tracts in this case were not void on account of the failure of the insurance company to comply with the statutory prerequisites to the right of a foreign insurance com- pany to do business in this State. The penalty imposed by the statute was exclusive of any other forfeiture."

In an early case this court, in defining the distinc- tion between directory and mandatory provisions of a statute, said that requirements which are of the essence of the thing to be done are mandatory, but those which are not of the essence are merely directory. *Miss. & C. R. Co.* v. *Gaster,* 20 Ark. 455. Requirements in regulation of the method of granting pardons are not of the essence of the thing to be done—the act of granting the pardon.

In *Sonfield* v. *Thompson,* 42 Ark. 46, Mr. Justice
EAKIN, speaking for the court, said: ''The definition
of a *directory,* as distinct from a *mandatory,* provision
in a statute is that it enjoins something which it is the
duty of the officer or person to perform, and for willful
neglect of which he may be held liable in damages to
any one injured, but the failure to do which does not
have the effect of invalidating the act.'' There are very
numerous decisions of this court defining this distinc-
tion. It has generally been held that statutes prescrib-
ing the method of discharging duties by public officers
are directory unless expressly or by necessary implica-
tion made mandatory. *Ex parte Buckner,* 9 Ark. 73;
*Byers & McDonald* v. *Fowler,* 12 Ark. 218; *Randolph* v.
*Thomas,* 23 Ark. 69; *Thompson* v. *State,* 26 Ark. 323;
*Little Rock* v. *Willis,* 27 Ark. 572; *Pierce* v. *Lyman,* 28
Ark. 550; *State* v. *Jones,* 29 Ark. 127; *Field* v. *Dortch,*
34 Ark. 399; *Holland* v. *Davies,* 36 Ark. 446; *Swepston* v.
*Barton,* 39 Ark. 549; *State* v. *Certain Lands,* 40 Ark. 34;
*Milleford* v. *State,* 43 Ark. 62; *Moore* v. *Turner,* 43 Ark.
257; *National Lbr. Co.* v. *Snell,* 47 Ark. 407; *State* v.
*Agnew,* 52 Ark. 275; *Katz* v. *Goldman,* 64 Ark. 395; *Nixon*
v. *Grace,* 98 Ark. 505.

The holding in *Baldwin* v. *Scoggin,* 15 Ark. 427, to
the effect that the failure of the Legislature to regulate
the exercise of the constitutional power of granting par-
dons and of remitting fines vested in the Governor does
not deprive him of that power, shows that the provision of
the Constitution in question is self-operating, and the
power given to the Legislature is merely directory, for
the power and duty of the Governor to act in the prem-
ises is given by the Constitution and cannot be suspended
or postponed until the Legislature shall speak, for the
Governor alone can grant pardons, and the Legislature,
as it is conceded, cannot abridge that right, such rules
and regulations would, in the very nature of things, be
directory, so far as the Governor is concerned. As stated
by the Supreme Court of Arizona in *Gherna* v. *State,* 146

Pac. 494, Annotated Cases, 1916D, p. 94, a self-executing provision of the Constitution does not necessarily exhaust legislative power on the subject, but any legislation must be in harmony with the Constitution and further the exercise of constitutional right and make it more available. The reason is that the Legislature is intrusted with the general power to make laws at its discretion, and is not a special agency for the exercise of specifically defined legislative powers. In that case the court had under consideration an amendment to the Constitution making it unlawful to manufacture or introduce into the State intoxicating liquors or to sell the same.

Therefore, the better reasoning in the case at bar is to hold that the framers of the Constitution merely meant to recognize the general power of the Legislature, and that the provision with regard to rules and regulations is directory. Of course, it would be just as much the duty of the Governor to obey a directory as a mandatory statute. If a constitutional provision imposes a duty on an officer and no legislation is necessary to require the performance of such duty, it would seem that the important and particular thing sought was the performance of the duty imposed, and that the manner and method of its performance was directory merely. In other words, the essence of the thing to be done is the performance of the duty, and not the prescribed method of doing it, which is merely directory.

Even if the statute is mandatory, the courts ought, when the Governor has granted a pardon, to indulge the presumption that all of the statutory requirements with respect to the presentation of the application have been complied with. There is always a presumption that public officers have discharged their duties until it is shown in proper form to the contrary. And there is a special reason for indulging this presumption with regard to the acts of the highest officer of a coordinate branch of the government. Such presumption has always been indulged by this court in regard to the proceedings of the

General Assembly, except as to the single matter of recording the ayes and nays on the final passage of a bill, which is expressly required by the Constitution. Most courts, including the Supreme Court of the United States, hold that there is a conclusive presumption arising from the enrollment and signing of a bill by a legislative body that all requirements were complied with, and, as before stated, this court has announced in many cases that such a presumption will be indulged with reference to legislative proceedings except as to the matter of recording the ayes and nays on the final passage of a bill. This court has for a long time persistently held in regard to the requirement of notice of the introduction of a local bill in the General Assembly that there is a conclusive presumption that the Legislature found that the notice had been given, unless the records, of which we take judicial notice, show affirmatively that the notice was not given. In one of the late cases on that subject we said: "The result of our present view is that the provision of the Constitution is mandatory and should be obeyed by the General Assembly, but there is always a presumption in favor of the legality of the legislative proceedings and that such proceedings are conclusively presumed to have been in accordance with the constitutional requirements, unless the record of which the courts can take judicial notice show to the contrary." *Booe v. Road Imp. District,* 141 Ark. 140. The test is whether or not there are records of which courts will take judicial knowledge showing affirmatively that the prerequisites have not been complied with. Now, there is no sound principle of law which would justify us in holding that the courts can take judicial notice of the records in the office of the Governor with respect to the application for pardon. There is no law requiring the Governor to keep in his office a record of his proceedings. On the contrary, the statutes of the State provide that the Secretary of State shall be the custodian of records which are to be kept, and that he shall "keep a full and accurate rec-

ord of all the official acts and proceedings of the Governor." Crawford & Moses' Digest, § 4396. If it had been intended by the lawmakers to require the preservation of the record, the proper way to give such a direction would have been to require the filing of the application for pardons and proof of publication with the Secretary of State, either by the applicant or by the Governor. There is no provision at all for the preservation of the proof of publication, and there is nothing in the language of the statute which would justify an interpretation that the validity of a pardon depended upon the preservation of the record. Stress is laid in the opinion of the majority on the use of the word "filed" with reference to the proof of publication, but there is no significance in the use of that word, which has many dictionary meanings and was evidently used by the lawmakers as specifying a requirement to present or deliver to the Governor such proofs. At any rate, the statute is complied with if the applicant for a pardon, his agent or attorney, hands the application and proof of publication to the Governor. If the Governor receives and considers it and grants the pardon, it is an extreme view of the law to say that the pardon is not valid unless the Governor preserves the evidences upon which he acted in granting it. Even if there was such a record kept, the courts would not take judicial knowledge of individual pardons. This is conceded in the opinion of the majority. Then how can a court in testing the validity of a pardon possess itself of facts with respect to compliance with the statute other than by hearing testimony *pro* and *con?* When the certificate of the county clerk or of "two persons known to be credible" is presented to the Governor, it is necessary for some one to determine whether the certificate of the clerk is sufficient in form and substance, or whether the two affiants are credible persons within the meaning of the statute, and this duty necessarily devolves upon the Governor. Who else is there to determine that question? Will the courts do so in passing upon the validity of the pardon? When a pardoned convict is called to the

witness stand in the court of a justice of the peace and the validity of his pardon is challenged, must he produce proof from the Governor's office that there was an affidavit of two persons filed, and that they were credible persons? It is inconceivable to me that the lawmakers ever intended such a spectacle, and yet such is the effect of the opinion of the majority. The fact that there was no dispute about the facts in the present case is not important, for, if the opinion of the majority is correct, in any case where there is a dispute, the trial court must go behind the face of the pardon and determine whether or not the law was complied with. The very fact that the Governor must necessarily determine, before issuing a pardon, whether or not the statute has been complied with, carries with it a conclusive presumption that he has properly discharged his duty. There are authorities supporting the view that such a presumption should be indulged, and none to the contrary, so far as I have been able to discover. *In re Moore,* 4 Wyo. 98; *Hester* v. *Commonwealth,* 85 Pa. 139; *In re Edymoin,* 8 Howard Pr. (N. Y.) 478.

There is another principle not to be overlooked—that the court should not lightly disregard long and continuous interpretations placed upon statutes by other departments of government, and it is undeniable that the universal interpretation of this statute by governmental departments and the public generally has been in accordance with the views hereinbefore expressed. In *Lake County* v. *Rollins,* 130 U. S. 662, Mr. Justice Lamar said that the simplest and most obvious interpretation of a Constitution, if in itself sensible, is the most likely to be that meant by the people in its adoption. The construction hereinbefore stated has been the general understanding of the bench and bar and those who have heretofore been Governors of the State. This court has recognized that in cases of ambiguous expressions or where the language admits of doubt, much persuasive force should be given to the construction given by the executive depart-

ment whose duty it is to enforce the provision and language accepted by the agencies of government and the people. *Vahlberg* v. *Keaton,* 51 Ark. 534; *Reynolds ex parte,* 52 Ark. 330. The rule was clearly and forcibly expressed by Judge Mitchell in delivering the opinion of the Supreme Court of Minnesota in *Willis* v. *Mabon,* 16 L. R. A. 281, as follows:

"Of course it is true, as counsel suggests, that this court has never before been called on to decide the question, and that mere assumption on the part of either bench or bar does not make a thing law; but, on the other hand, it is also true that a construction which has for a third of a century been accepted by every one as so obviously correct as never to have been questioned or doubted is much more likely to be right than a newly discovered one, suggested at this late day by the emergencies of present litigation. The fact that no such view ever before suggested itself to the minds of court or counsel in the numerous cases where the point might have been made and where it was to the interest of counsel on one side or the other to make it, certainly raises a strong presumption against it."

The fact that great inconvenience and harmful results will follow from this decision should make the courts slow to depart from the general interpretation heretofore placed upon this statute. Many an individual who has, in fancied security, carried away from the Governor's office a full and free pardon from the effects of his crime will have his hopes dashed by being informed in the opinion of this court that his pardon is void. A pardon regular on its face ought to be impervious to collateral attack, and I believe that it is so. Otherwise, it must be reckoned among the elusive things "that keep the word of promise to our ear, and break it to our hope."

I am authorized to say that Mr. Justice HART agrees with me in all that is said in this opinion.

HART, J., (dissenting). I agree to the dissenting opinion of the Chief Justice, and in addition wish to add the following:

As stated in the dissenting opinion of Judge Wood and myself in *Easley* v. *Patterson,* 142 Ark., at p. 71, one of the meanings in law given to the verb "exhibit" by Webster is to file of record. Hence, as there stated, it seems to me that when the framers of the Constitution provided that the evidence of the publication of the notice required in case of local bills should be exhibited in the General Assembly before such act shall be passed meant that it should be filed of record there. Then, if any proof of publication of the notice appeared on file as a part of the records of the Legislature, the courts would not inquire into the sufficiency of the notice, but would indulge the conclusive presumption that the Legislature had found that it had been amended so as to conform to the Constitution.

On the other hand, if no notice of publication of the notice was filed of record in the Legislature, this would be proof in the courts that the evidence of the notice having been published had not been exhibited to the Legisture and that the mandate of the Constitution had not been complied with. Now, it is evident that the majority opinion in this, as well as our cases bearing on the subject, proceeded upon the theory that the clause requiring that the evidence of such notice having been published shall be exhibited in the General Assembly addressed itself to the Legislature and not to the courts. So, when the special act was passed, the proof of publication of the notice had served its purpose by giving the required information to the Legislature; and, although it might be a part of the records of the Legislature, it had served its purpose, and it would be no longer necessary to preserve it as a part of the legislative records. Hence, if it was destroyed, there would be nothing left upon which a court might act either by way of judicial knowledge or by evidence *aliunde.*

It will be noted that the Booe case in 141 Ark. 140 is not opposed to this view. There it was held that the court could take judicial notice of the date of the proclamation of the Governor under the Constitution for an extra session, and also of the date of the approval of the act passed at the special session. When this was done, it was conclusively established that the 30 days' notice by publication required under the Constitution could not have been given. Thus it will be seen that the question of whether the proof of publication became a part of the records of the Legislature was not decided at all. As we have already seen, however, it appears, by necessary implication at least, under the majority opinion of *Easley* v. *Patterson,* 142 Ark. 52, that the clause requiring the notice of publication to be exhibited in the General Assembly was for the benefit of the Legislature, and, when it had served its purpose, need not be preserved. If it was to become a permanent part of the records, it would be open to inspection by the courts at any time, just as the legislative journals, and the court could at any time take judicial knowledge of their state, condition or contents. If the court will not take judicial knowledge of the contents of the proof of publication of notice exhibited or filed of record under a mandatory provision of the Constitution, it seems inconsistent to make such a holding in case of statutes like this. It will be noticed that § 3370 prohibits the Governor from granting any application for a pardon until the certificate of publication has been filed in his office. So if the mandatory provision requiring evidence of notice in the case of special acts to be exhibited before the Legislature could pass the bill addressed itself to the Legislature and not to the courts, with equal reason it should be held that the statute in question prohibiting the Governor from acting upon an application for a pardon before the certificate of notice of publication was filed in his office was for his benefit and could not be inquired into by the courts. The most extreme view that can be taken of the Booe case is that where the court ascertained

by evidence of which it may take judicial knowledge that the notice required in case of special acts could not have been given, it will declare the act void. Now, it is evident that, even under the view of the majority opinion, it cannot be said that it is conclusively established that the act in question was not complied with in the matter of publication of the application for pardon. Now, it is quite evident that the Lieutenant Governor stands in the shoes of the Governor when the latter is absent from the State. It may be that the publication required by the statute was had before the Governor left the State, and that the certificate thereof was filed in his office after he left the State, and while the Lieutenant Governor was in office. The latter might have deemed that the files with reference to the pardon were of no further use after the pardon was granted and have destroyed them. In such a case our judicial notice would not avail us anything. There would be nothing there. Again I repeat, if the mere requirement of filing means to be preserved for judicial review by the courts, the rule in case of local bills should be changed so that the notice required in case of local bills to be exhibited or filed of record should be preserved as permanent files to be reviewed by the courts in determining whether the mandatory provision of the Constitution had been complied with. It will be observed that there is nothing in the pardon statute requiring the Governor to write in the pardon that the statute with regard to the publication of the application had been complied with. There is no statutory form of pardon where the publication is given. It is only in cases where the notice is dispensed with that there is any special requirement about the form, and the requirement then is merely that the Governor state on the face of the certificate thereof that the pardon was granted without application thereof by any paid representative or attorney of the person pardoned.

The Constitution having conferred the absolute power upon the Governor to grant pardons, neither the

Legislature nor the courts can enforce restraints in its exercise. Because the Governor has the absolute power under the Constitution, its evasion or abuse is not a matter for the courts, but for the people. It follows that the whole statute under consideration is addressed to the judgment and conscience of the Governor, and he is to say conclusively, as he passes upon each application for pardon, whether legal notice has been given. Even if the evidence of the notice was intended to be preserved when filed of record, it is for the purpose of informing the people whether the Governor has regarded the duty imposed upon him under the statute, and not for the purpose of enabling the courts to review his action. In short, neither the courts nor the Legislature is capable of controlling the exercise of the pardoning power, which has been exclusively and unconditionally conferred upon the Governor, and they cannot assume to do so without putting themselves in opposition to the fundamental principles of the Constitution and the construction heretofore placed upon it by the Governors and others interested in enforcing its provisions.

SMITH, J., (on rehearing). It is insisted in one of the briefs filed in support of the petition for rehearing that the act under review was not properly passed, for the reason that the bill, not having been approved by the Governor, was not properly attested by the Secretary of State.

The following notation is indorsed on the original bill as the same appears in the office of the Secretary of State: "This bill having remained with the Governor five days (Sundays excepted), and the General Assembly being in session, it has become a law this April 20, 1903." This notation was not signed by the Secretary of State.

By § 4971, C. & M. Digest, it is provided that "every bill which shall have passed both houses of the General Assembly, and shall not be returned by the Governor within five days, having thereby become a law, shall be authenticated by the Governor causing the fact to

be certified thereon by the Secretary of State, in the following form: '.This bill having remained with the Governor five days, Sunday excepted, and, the General Assembly being in session, it has become a law this ............ day of ........................ D. B. G. Secretary of State.' "

It appears, however, that the bill was duly enrolled, and the enrolled bill was presented to the Governor. The rules of the General Assembly provided for the enrollment of bills and the presentation of the enrolled, and not the original, bill to the Governor for his consideration and approval, and the enrolled bill was presented to the Governor, and upon the bill as enrolled appears the notation required by the section of the statute set out above, and the certificate signed by the Secretary of State appears on the bill as enrolled. This was sufficient.

Moreover, it is provided by art. 6, § 15, of the Constitution, that "if any bill shall not be returned by the Governor within five days, Sundays excepted, after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the General Assembly, by their adjournment, prevent its return, in which case it shall become a law, unless he shall file the same, with his objections, in the office of the Secretary of State and give notice thereof by public proclamation within twenty days after such adjournment."

It is thus stated when, according to the mandate of the Constitution, a bill shall become a law. It is not within the power of the Legislature to add to or to take from this mandate. The omission of the Secretary of State to make the indorsement set out above could not therefore prevent a bill from becoming a law, where the Constitution, in stating when a bill shall be a law, does not contain the requirements that the notation be made.

The proper passage of the act by the General Assembly is also questioned in one of the briefs filed in support of the motion for rehearing, but we have

examined the journals of both houses and find that the act was properly passed in both the Senate, where the bill originated, and in the House.

The petition for rehearing is overruled.