SONFIELD V. THOMPSON ET AL.

ACKNOWLEDGMENT OF DEEDS: *Notary's certificate: Seal, emblems, devices, want of.*

The absence from a notary's seal of the emblems and devices required by the statute does not invalidate his certificate of the acknowledgment of a deed.

APPEAL from *Phillips* Circuit Court.
Hon. J. N. CYPERT, Circuit Judge.

*Jacob Triebor*, for appellant.

While the seal used was not as prescribed by statute, yet it might properly be held to be a private seal, within the meaning of the statute. (*Sec. 4302, Gantt's Digest.*) The strict construction of the statute contended for, is neither necessary for the protection of creditors or subsequent purchasers, nor is it just or equitable.

The record in the recorder's office showed a perfect deed,

for the seal did not appear of record, except as a scroll, and that was all the notice appellee was legally entitled to, and sufficient to charge him with notice.

The defense is technical, opposed to equitable principles, and is not within the spirit of the law.

*M. T. Sanders*, for appellees.

The statute requires each notary to' provide a seal of a particular *description*, with which he shall authenticate all his official acts. (*Gantt's Digest, sec. 4302.*) The seal used in this case does not comply with the statute. Officers whose official acts are required to be authenticated by a seal, must follow the law strictly. Their acts are of no force or validity unless attested by the kind of a seal which the law prescribes. To use a seal unknown to the law, or a wrong seal, is as fatal as the omission of a seal altogether. The certificate was no evidence of acknowledgment and insufficient to entitle the instrument to record. *15 Ark., 246; 32 Ib., 454; 6 Ark., 252.*

EAKIN, J. Appellant, Sonfield, is the trustee in a certain deed of trust, which is, in effect, a mortgage of personal property with power to take possession and sell, executed by Thompson on the second day of April, 1881, to secure a debt to Herman Fuerst. Default having been made, he brought replevin against Thompson to get possession. Thompson made no defense, but H. P. Grant and L. Hough were allowed to come in and defend as interpleaders; claiming the property by better right.

They set up another trust deed of the same property, executed by Thompson to Hough, in November, 1881, to secure a debt to Grant, which was then duly filed for record; and allege that the trust deed to plaintiff does not appear to have been duly acknowledged and recorded so as to effect them with notice.

Sonfield v. Thompson et al.

NOTARY'S
SEAL:

Emblems,
devices.

The alleged defect in the plaintiff's deed is that it was acknowledged before a notary public and authenticated by a seal which does not purport to be the private seal of the notary, and is not the proper seal of his office, as prescribed by law.

The figure of the seal which appears in the clerk's certificate of record, and upon the book of records, only as a scroll, is represented to us in the bill of exceptions, as the impression appears in the original. It is circular with an outer rim, on which appears at the top, "Jas. R. Turner," and at the bottom " Notary Public." In the center appears " Poplar Grove, Phillips Co., Ark." It is affixed as his seal "as notary public."

The court upon hearing, found for defendant Grant, and rendered judgment that he retain the property, from which Sonfield appeals.

The statute provides that every officer taking an acknowledgment of instruments for record, shall seal the certificate if he have a seal of office. (*Gantt's Digest, sec. 844.*) Notaries public were authorized to take the acknowledgments of deeds, etc., executed within the State. *Ib., sec., 841.*

With regard to notaries, a separate statute provided that they should certify under their official seals, the truth of all matters and things done by virtue of their office (*Ib., sec. 4299*); and in another section, prescribed certain emblems, devices and legends, which the impression of a notary's seal should present. Suffice it to say, on this point, that the impression in this case does not fulfill the requirements, with regard to the emblems and devices, although it does contain the legend, somewhat differently arranged from the mode prescribed. It is not a good seal, if the act in regard to acknowledgments before notaries, and the act prescribing their seals, are both to be taken together as mandatory.

It must be confessed that the power which the courts have

assumed of construing statutes according to their equity, and of distinguishing between mandatory and directory provisions, and of treating those held directory as if they were merely advisory, is a very dangerous one, productive of much confusion and uncertainty with regard to individual rights, until each particular statute has been "licked into shape" as it were by judicial decisions. Upon the other hand, it is quite apparent that the power and the duty to exercise it, are absolutely essential to guard against absurd conclusions, which the Legislature can not have contemplated, and to prevent the most shocking invasions of natural justice, and individual rights, which would often result from obedience to the letter of the law, however plainly expressed. Courts are properly reluctant to stultify the legislative department, and to become the instruments by which hardships are perpetrated, which the Legislature never had in view.

Courts have the legitimate power to ascertain the will of the Legislature, and in doing that have often felt the necessity of departing from the letter and strict grammatical construction of acts, and sometimes from the ordinary significance of words. And it is in pursuance of this power of ascertaining the true intention, and giving effect to the general purpose of acts, that they have drawn the distinction, or attempted to do so, between such directions as avoid an act done without their strict observance, and those which are prescribed rather for convenience and correct form, and which in general should be observed, but which are not considered of such importance as to fairly raise the presumption that the Legislature intended them to be in all cases indispensable. No formal rules have been, or can be laid down for the exercise of this power. Reference must always be had to the will of the Legislature, to be judicially ascertained from the language,

4

policy and manifest purposes of the act, taken altogether. Of course this discretion may be abused, and from its delicate nature, is one which courts have not unfrequently been desirous of abnegating entirely, yet none of them have as yet dared to face the consequences of a strict literal interpretation.

Notaries are public officers of the whole commercial world. Strict notarial duties concern commerce alone. Their acts duly authenticated are valid everywhere, and prove themselves by comity of nations. It was eminently fit that our Legislature in providing for the creation of notaries, should prescribe for them minutely, the seals which should be the attestation of their authority in sister States and foreign nations. In commercial affairs, their original certificates come under the inspection of all who act upon them, or can be affected by them, and the conformity of their seals with the devices, emblems and legends prescribed by law, gives abroad some additional assurance of authenticity. It renders imposture somewhat more difficult. It is a wise direction for proper notarial purposes, and very useful for general observance.

The directions occur in the act providing for the appointment of notaries, as follows :

" Every notary shall provide a seal of his office, which shall be engraved so as to present, by its impression, the emblems and devices presented by the great seal of the State, surrounded by the words 'Notary Public, County of ———, Ark.,' and he shall authenticate all his official acts therewith, and until an official seal shall be procured, each notary may use his privy seal, which shall be of the same force and effect as a public seal." *Gantt's Digest, sec. 4302.*

This does not purport to be a private seal, all of which indeed are abolished since the Constitution of 1868. *Art. 15, sec. 16.*

The definition of a *directory*, as distinct from a *mandatory* provision in a statute, is that it enjoins something which it is the duty of the officer or person to perform, and for willful neglect of which he may be held liable in damages to any one injured, but the failure to do which does not have the effect of invalidating the act.

There are in the section quoted two marked indications that it was intended to be directory. Without the section each notary might have devised his own seal. The section refrains from declaring expressly that any other seal than that designated shall be unlawful, or that an official act authenticated by any such other seal shall be void. This want of negative or condemnatory words with regard to other modes, has been, in several cases, taken as one of the *indicia* of a statute merely directory, although, of course, it is not decisive. Indeed, no rule on the subject can be laid down as decisive. The courts must often grope in very dim lights. (*Bishop on Written Law, sec. 254, et seq.; Sedgwick on Stat. & Const. Law, p. 318, note a,* where many examples are collected.) It is well, therefore, to say, in passing, that this rule is to be applied with caution, and only in aid of efforts to reach the true meaning. Many directions wanting negative or avoiding words are nevertheless from their own nature and importance held mandatory.

The second, and more persuasive *indicium* of intention is found in the provision for the use of his private seal by any notary until an official seal shall be procured, without any injunction upon him to procure one with convenient dispatch. This is wholly inconsistent with any supposed view in the legislative mind, that the special devices of the State seal were essential in the nature of things, or for any cogent reason, to give validity to a notarial act. *Some* seal is necessary, as this court has held. To affix one is a sol-

emn act, and any one which may be afterwards identified
as the actual seal of the notary, may well have been con-
sidered as giving assurance, in addition to the signature,
that the act is genuine. It might make the detection of a
spurious instrument more easy. Such has always been the
object and purpose of all seals, and in ruder ages the pur-
pose was pretty effectually accomplished, more especially
by private seals, which have always been various and pecu-
liar, since the time when William the Conqueror, in token
of sooth, did " bite the white wax with his tooth." The
more obvious construction of the section thus seems to be,
that whilst the Legislature meant to insist on some seal as
essential, and to direct the use of the State emblems as the
best for uniformity, it did not intend that an instrument
should be void without those particular impressions upon
the seal; *provided*, the notary should actually use the seal
with which he was used to authenticate his official acts. He
certifies in this case that he does so, by declaring that it is
his seal as notary public.

Again: The functions of notaries principally regard com-
merce. They have by the law merchant no inherent power
to take the acknowledgment of instruments of conveyance
between individuals, for the purpose of registration. This
is given them by statute, and *quoad hoc*, their powers and
duties, and the legal effect of their acts, must be viewed as
a part of the system of registration, and must be construed
and determined with reference to, and in harmony with,
the policy of that system. The system is the important
thing. The agency of notaries is only called in as ancillary
to it. The policy of the system is to give notice of all con-
veyances, to the world, for the protection of purchasers,
obligees and grantees. It would entirely defeat that policy
and give unbounded license for fraud if a recorded deed,
effective in its terms as a conveyance, and appearing, on

any record that could be made of it, regular as to acknowledgment and filing, could be afterwards set aside in favor of a subsequent conveyance, from any defect of form which *could not possibly have appeared upon the record.* The recorder is not required to make a *fac simile* of the impression of a seal upon his books, and certified copies of them. He generally could not if he were. He does it by a scroll. His books show the acknowledgment and the terms of it, and the officer who takes it, and the date of filing, and that a seal was used which purports to have been a seal of office, and all this truthfully. If he were to record an instrument which, from any of the things required to be shown of record, appears not to have been properly acknowledged and filed, it would reasonably be held, and is so held, to be no notice. But if all he shows or is required to show be proper, it would be monstrous if persons dealing upon the faith of the record could not be protected by it.

One might, in a contrary state of the case, make a deed to a purchaser and acknowledge it before a notary not using the statutory seal. The purchaser might record it and make other conveyances upon it; and the land might pass on to other vendees who might make valuable improvements, relying upon perfect abstracts of title, from the legal source, and be afterwards ejected by some junior vendee of the original grantor. If it be said that such a successive purchaser should have demanded all the original papers in the chain and inspected the seals, of what value are the registration laws at all? that is, in view of giving assurance of title? They would be worth this, it is true, that finding his chain regular, after going back through all originals, he would then be protected against all elder unrecorded or junior recorded deeds; but that is not all or the principal policy of the law. In the rapid transitions of property in the American States, and the constant danger

of loss of originals, from the shifting habits of our people, they were intended to give evidence of title which might be relied on, whilst showing in the contents of the instruments, and upon the face of the certificates, everything of which a purchaser should equitably take notice. If the doctrine be established that a seal like this avoids the notary's certificate, then it would be better to burn every deed acknowledged before a notary as soon as recorded. There might, on close inspection, be found some difference between the impressions made by the notary's seal and that of the State, which the fire would cure and leave the record good.

We do not think the Legislature meant the section in question to be mandatory, and conclude that the court erred in finding for the defendant.

Reverse and remand for a new trial, with usual directions.