Delaney ALEXANDER; Joann Smith, Chair,
Phillips County Board of Election
Commissioners; Maxine Miller and Joe Howe, as
Members of the Phillips County Board of
Election Commissioners; Lyle Wheeler;
Kim Heagwood; and Travis Williams
*v.* Alma McKinney DAVIS, Ozell Davis, Geraldine Davis,
and Rosetta Ross Davis

01-118 58 S.W.3d 330

Supreme Court of Arkansas
Opinion delivered October 25, 2001

David Solomon; Robert Morehead; Roscopf & Roscopf, P.A., by: Charles B. Roscopf; and Edward H. Schieffler, for appellants Delaney Alexander, Lyle Wheeler, Kim Heagwood, and Travis Williams.

L. Ashley Higgins, P.A., by: L. Ashley Higgins, for appellants Joann Smith, Maxine Miller, and Joe Howe.

No response.

TOM GLAZE, Justice. This is another appeal arising out of a Phillips County election, this time involving the election of a justice of the peace and three Democratic Committee positions elected from Justice of the Peace District 9. This particular district was created as a result of a federal district court proceeding in *Varner v. Clatworthy*, U.S.C.C. Case No. H-C-92-19 (E.D. Ark. 1994). In *Varner*, the federal district court entered a consent decree as a result of a class action lawsuit that had been brought by African-American electors in Phillips County, challenging the electoral districts for quorum court members. That decree ordered that the electoral voting districts for the quorum court shall be in accordance with an attached map with descriptions made a part of the decree. Significant to the instant case, the map created and established in the *Varner* case has been used by Phillips County election officials in all of the county elections since 1994; this includes the May 23, 2000, Democratic primary election in issue here.

Appellant Delaney Alexander and appellee Geraldine Davis timely filed as Democratic candidates for justice of the peace for District 9, and appellants Lyle Wheeler, Travis Williams, and Kim Heagwood and appellees Alma Davis, Ozell Davis, and Rosetta Davis filed respectively as Democratic candidates for positions 1, 2, and 3 as committee members from District 9. After the May 23 election, the Phillips County Election Commission met on May 26, 2000, to certify the election results, which showed the following tallies:

Justice of the Peace for District 9
| | |
|---|---|
| Delaney Alexander | 498 |
| Geraldine Davis | 412 |

Position 1
| | |
|---|---|
| Lyle Wheeler | 475 |
| Alma Davis | 427 |

Position 2
| | |
|---|---|
| Travis Williams | 461 |
| Ozell Davis | 430 |

Position 3
| | |
|---|---|
| Kim Heagwood | 499 |
| Rosetta Davis | 419 |

The commission's certification was filed on May 31, 2000. On June 15, 2000, appellees filed a complaint in Phillips County Circuit Court contesting the election pursuant to Ark. Code Ann. §§ 7-5-801, *et seq.* (Repl. 2000), and asserting that unlawful votes had been cast for the appellants and that the appellees should be certified as winners. Alternatively, appellees alleged the four appellants, plus the Phillips County Election Commission, had deliberately and unlawfully violated appellees' rights and, consequently, the court should void the justice of the peace and committee member races.

On October 23, 2000, the parties presented all their witnesses, evidence, and arguments, and the trial judge took the matter under submission, but did not enter his decision until December 29, 2000. In his December 29 order, the judge ruled the appellees had failed to meet their burden in contesting the votes cast and certified in the races for justice of the peace and the three committee member races. The judge explained the appellees "had failed to carry their specific burden that there was a specific and identifiable number of illegal votes cast for the appellants that would allow him to declare with some reasonable certainty the winners of the [May 23, 2000] election." However, the judge further held appellees prevailed on their alternative prayer for relief that the District 9 races should be declared void because the appellants were not qualified for the office or positions they sought, since they resided outside District 9. The judge further found that voters residing outside District 9 were allowed to vote in the May 23 election. The judge based his ruling on the case of *Patton v. Coates*, 41 Ark. 111 (1883). The judge's decision was erroneous.

■■ We first point out both parties' tardiness in joining the issues concerning whether the appellants were qualified to have their names on the May 23 ballot. In *Jenkins v. Bogard*, 335 Ark. 334, 980 S.W.2d 548 (1998), we cited Ark. Code Ann. § 7-5-207(b), which provides that "[n]o person's name shall be printed on the ballot as a candidate for any public office in the state at any election unless the person is qualified and eligible at the time of the filing as a candidate for office, to hold the public office for which he is a candidate. . . ." The *Jenkins* court further stated that the proper means of enforcing § 7-5-207(b) is to petition for *mandamus* and declaratory judgment. *See also State v. Craighead County Bd. of Election Comm'rs*, 300 Ark. 405, 779 S.W.2d 169 (1989). In *Jenkins*, the court also emphasized that Ark. R. Civ. P. 78(d) was the procedural vehicle by which an election proceeding could be expedited in order to enforce § 7-5-207(b), since that rule provides that a hearing be held no sooner than two days and no longer than seven days after the filing of a petition for writ of *mandamus* in an election matter. *Jenkins*, 335 Ark. at 339. However, the court further stated that our cases have not suggested that the violation of the two-to-seven day provision would deprive the court of jurisdiction. *Id*. The *Jenkins* court then proceeded to hold that the trial court's failure to hold a timely hearing in that election case did not deprive the trial court of jurisdiction, thus making it clear that it was up to the candidate (Jenkins) to have objected to the trial court's failure to hold the hearing within the time requirements set out in rule 78(d). *Id*. at 340.

■ In the instant case, the appellees failed to file their complaint for declaratory judgment and writ of *mandamus* in a timely fashion, but instead waited until *after* the May 23 election to request the trial court to rule the appellants were not qualified to hold the office or positions they sought. Appellees interposed no objections to the delay until October 2000.

Even though appellants delayed in bringing their challenge to appellees' allegations regarding appellants' qualifications, appellees' arguments still must fail. As mentioned already, while the trial judge ruled the appellees had failed to prevail on their election-contest allegations, the judge found merit in their alternate cause of action and voided the appellants' election. The judge based his ruling on the early case of *Patton v. Coates*, 41 Ark. 111 (1883). The judge's reliance on *Patton* is clearly misplaced.

As noted by the appellants, the *Patton* case demonstrates the very worst in Arkansas reconstruction politics when fraud and

intimidation of voters were rampant. The trial court's findings in *Patton* illustrated this fact by relating the following:

> [With regard to Eagle Township,] quite a number of illegal votes were cast for plaintiff by non-residents. That in one or two instances legal voters who had desired to vote for Patton were rejected. That an armed force was around the polls all day. That they were armed with needle guns, rifles and shot guns, and that those so armed were colored men (with one exception) and supporters of the plaintiff. That these guns were stacked immediately around the polls. That fifty-three men had guns in the afternoon of the day of the election, and that quite a number of them, with their guns, accompanied the officers who brought up the returns to the county clerk.
>
> With regard to Eastman [Township, the judge found]: That early in the morning even before the polls were opened, a large crowd of colored men, ranging from two hundred to four hundred, surrounded the polls, a large majority of whom were supporters of plaintiff, and by their conduct made it exceedingly difficult for a colored man, desirous of supporting defendant to deposit his ballot. That supporters of plaintiff would forcibly take their ballots from them, threaten to burn their houses, throw them into the river, turn them out of church, &c., in case they voted for the ticket upon which defendant was a candidate. That, in certain circumstances, voters were so intimidated as either to leave the polls without voting, or had to be conducted to the polls under the protection of white citizens. That one Moore, a colored man, declined to go to the polls because he would not be allowed to vote as he saw fit. That one Andrew Jackson, a resident of Mineral township, presented himself as a voter of Eastman polls, and was challenged. That said Jackson told one of the judges (George Scott) that he lived in Mineral township. That, notwithstanding this, said Scott allowed him to vote, without swearing him, and without calling the attention of the other judges thereto. That some twelve or fifteen men in one crowd, desiring to vote "the people's ticket," were furnished tickets, and in attempting to vote were set upon by a much larger crowd of supporters of plaintiff, their tickets taken from them, and only two voted as they wished.

*Patton*, 41 Ark. at 135-36.

This supreme court in *Patton*, recognizing the narrow limits that must be followed in exercising its powers to void an election, said:

Upon the other hand, *it devolves upon the courts not to press this principle too far, nor apply it lightly to slight indications of fraud, violence or intimidation.* Its application, indeed, is a matter of the greatest and most anxious responsibility, inasmuch as it involves, necessarily, the disfranchisement, in the particular election, of all the honest voters of the township. The wrong should appear to have been clear and flagrant, and in its nature diffusive in its influences, calculated to effect more than can be traced, and sufficiently potent to render the result really uncertain. If it be such, it defeats a free election, and every honest voter and intimidated or deceived voter is aggrieved thereby. It is his interest to sacrifice his own vote to right the evil. If it be not so general and serious, the court cannot safely proceed beyond the exclusion of particular illegal votes, or the supply of particular legal votes rejected. (Emphasis added.)

*Id.* at 126 (emphasis added).

▪ In 1956, this court in *Baker v. Hedrick*, 225 Ark. 778, 285 S.W.2d 910, stated that it is a serious matter to throw out an entire election, and that result should not be reached unless the contestant has offered proof sufficient to satisfy the test in *Patton v. Coates.* In the more recent case of *Henard v. St. Francis Election Commission*, 301 Ark. 459, 783 S.W.2d 598 (1996), this court spoke in the following restrictive terms when considering voiding an election:

This court has said that while we do not condone disregard of the state's election laws, we are nevertheless reluctant to void an entire election on the basis of a slight deviation from the statutory requirements. The failure to comply with the letter of the law of election officers, especially in matters over which the voter has no control, and in which no fraud is perpetrated, does not as a general rule render an election void, unless the statute expressly makes it so. *Allen v. Ranklin*, 269 Ark. 517, 521, 602 S.W.2d 673, 675 (1980) (quoting *Goggin v. Ratchford*, 217 Ark. 180,229 S.W.2d 130 (1950). None of the improprieties alleged by appellants appear to have affected the outcome of this election.

Interestingly enough, the trial judge in the instant case recognized the limited power of a court to void an election by his own language contained in his judgment:

The Plaintiffs have alleged, in fairly particular terms, an alternate cause of action recognized by our supreme court as early as 1883. In *Patton v. Coates*, 41 Ark. 111 (1883), our supreme court was clear in its holding that a showing of receipt of the majority of the

lawful votes was but one avenue in matters such as these. *The Court is empowered to declare an election void where: the wrong should appear to have been clear and flagrant*; and in its nature, diffusive in its influences; calculated to effect more than can be traced; and sufficiently potent to render their results uncertain. If it be such, it defeats a free election, and every honest voter and intimidated or deceived voter is aggrieved thereby . . . If it be not so general and serious, the court cannot safely proceed beyond the exclusion of particular illegal votes, or the supply of particular legal votes rejected. *King v. Davis*, 324 Ark. 253, 256, 920 S.W.2d 488, 490 (1996) (citing *Patton, supra*) [emphasis added].

After espousing the foregoing language, the trial judge nevertheless deduced that the record before him showed that the appellants were not qualified for the office (or position) sought by reason of their residencies being located outside of Justice of the Peace District 9. The trial judge also found that voters residing outside District 9 had been improperly allowed to vote in the May 21, 2000, election. There, significantly, the trial judge found no charges of fraud or intimidation were shown, nor were such charges argued by appellees in this appeal. In fact, the only evidence offered by appellees regarding illegal votes being cast at the May 23 primary election, involved whether some voters, who allegedly resided outside Justice of the Peace District 9, had voted illegally in the District 9 races. As discussed earlier in this opinion, the Phillips County Board of Election Commissioners complied with the 1994 federal district court's map and descriptions in the *Varner* decision when conducting the May 23, 2000, election. Appellees unquestionably resided within the District 9 boundary lines as those lines were described and established in *Varner*; in addition, the electors had complied with the *Varner* decree by residing and casting votes in that precinct and district.

In rendering his decision, the trial judge appeared to rely on testimony given by former Phillips County Election Commissioner, Marvin Jarrett, who related that the *Varner* map had been originally established by census tracts and block numbers. Jarrett testified that more recent census tracts and county maps reflect changes that had occurred which had modified the original District 9 boundary, causing appellants and many voters to now reside presently outside District 9 and placing them presently in different justice of the peace districts and voting precincts. However, nothing in the record reflects that appellees (or anyone else, for that matter) brought an action in federal district court to modify or revise the district boundaries established by the *Varner* court, and the trial judge does

not make it clear how the Phillips County election officials could lawfully ignore the district and precinct boundaries established in *Varner*.

 It is our view that the Phillips County Board of Election Commissioners and county clerk acted lawfully when complying with the 1994 *Varner* consent decree and its map and descriptions. Certainly these officials' good faith cannot be questioned when those Phillips County election officials merely followed the *Varner* decree as their predecessors had done in all elections held in that county since 1994. At this point, we also note Arkansas's well-established rule that election procedures are mandatory before an election but are only directory after the election. *See Allred v. McLoud*, 343 Ark. 35, 31 S.W.2d 836 (2000); *see also Spires v. Compton*, 310 Ark. 431, 837 S.W.2d 459 (1992) (appellants did not seek to remedy a precinct boundary problem until after the election, and the court, in upholding the election, stated that the rule, providing precinct boundaries after an election are directory, undergirds the stability of elections by making it more difficult to set aside an election because of an inadvertent or technical violation of an election law provision). Here, appellees had every opportunity to question the district and voting precincts established in *Varner*, yet they failed to do so prior to the May 23 election when they could have readily avoided undertaking the extreme remedy of setting aside or voiding the District 9 races. For the reasons above, we hold the trial judge erred in declaring the District 9 races void. And because the appellants' election certifications were valid, the trial judge's decision declaring the appellees, as incumbents, entitled to hold over, is also erroneous.

 In conclusion, we address appellees' motion to dismiss this appeal because the appellants failed to file their notices of appeal within seven calendar days from the date of the entry of the judgment in an election contest, as provided under Ark. Code Ann. § 7-5-810 (Repl. 2000). Appellees argue that appellants' untimely filing of their notices of appeal renders this court without jurisdiction to decide this appeal. Appellees are mistaken; that provision simply is not applicable to this proceeding. That provision clearly reflects that it applies to election-contest proceedings as authorized in Ark. Code Ann. §§ 7-5-801, *et seq.* (Repl. 2000). The trial judge in this case rejected appellees' election-contest claims, and appellees filed no appeal from that ruling. What appellants challenge in this appeal is the trial judge's decision to void the appellants' and appellees' primary races. In short, this part of the trial judge's ruling does not concern an election contest action as that right of action is

described in § 7-5-801. Therefore, we deny appellees' motion to dismiss.

We reverse and remand this case with directions for the trial court to enter an order consistent with our holdings set out in this opinion. Such an order shall include recognizing that appellees are not entitled to retain their offices or positions as holdovers since appellants were lawfully certified as winners in their respective races.