The Honorable Martha A. Shoffner State Representative P.O. Box 44 Newport, AR 72112
Dear Representative Shoffner:
I am writing in response to your request for my opinion on various questions you have submitted on behalf of the Newport City Attorney, who reports circumstances I will summarize as follows:
 Candidate A defeated Incumbent B for an alderman position. Candidate A was convicted of possession of a controlled substance with intent to deliver, a felony, in 1987. On March 26, 2002, Candidate A signed his political practices pledge when he filed as an Independent candidate for alderman and certified that he had never been convicted of a felony in the state of Arkansas. On November 1, 2002, Candidate A obtained an order of expungement of that 1987 conviction.
These circumstances have prompted the city attorney to pose the following questions:
 1. Having been a convicted felon when he filed as a candidate for office, was Candidate A eligible to be placed on the ballot for election?
 2. If Candidate A was not eligible to run as a candidate for office, what procedure is used and who is the proper party to bring an action against him to have him declared ineligible?
 3. If Candidate A is charged and found guilty of violating A.C.A. § 7-6-102, what procedure must then be used to remove him from office?
RESPONSE
With respect to your first question, assuming Candidate A met the formal requirements for filing as a candidate, I believe the election commission, which serves a purely ministerial function, was correct in placing his name on the ballot, notwithstanding your report that Candidate A had an unexpunged felony conviction that rendered him ineligible to run at the time he filed as a candidate. With respect to your second question, I believe Candidate A's eligibility at the time he filed to run is in all likelihood a moot issue since no one sued to challenge his candidacy prior to the election and he cured the deficiency by obtaining an expungement of his record. Following the election, a court would treat the requirement of filing a record of the expungement as purely directory, not mandatory. Given that Candidate A was eligible at the time of the election, having obtained an expungement of his felony conviction, I do not believe a post-election challenge based solely on the fact of the misleading filing would succeed. As for the parties authorized to bring a post-election challenge, this office has the power to do so pursuant to the usurpation statute, A.C.A. § 16-118-105, and pursuant to the common-law remedy of quo warranto. In addition, pursuant to Ark. Const. art. 16, § 13, an aggrieved taxpayer might seek a judicial declaration that Candidate A is ineligible to serve. With respect to your third question, I believe all of the three remedies just recited would be available if Candidate A were first convicted of felony misrepresentation pursuant to A.C.A. § 7-6-102(c). Under these circumstances, the fact of the felony conviction would in itself render Candidate A ineligible to serve.
Question 1: Having been a convicted felon when he filed as a candidatefor office, was Candidate A eligible to be placed on the ballot forelection?
I should note at the outset that you have provided me no documentation establishing that Candidate A was indeed "a convicted felon" at the time he filed as a candidate. As discussed in Ark. Op. Att'y Gen. No.2002-316, not every criminal adjudication results in a "conviction." For purposes of the ensuing discussion, I will simply assume that Candidate A was indeed convicted, as I will the fact of the pre-election expungement.
Article 5, § 9 of the Arkansas Constitution provides: "No person hereafter convicted of embezzlement of public money, bribery, forgery or other infamous crime shall be eligible to the General Assembly or capable of holding any office or [sic] trust or profit in this State." Both the Arkansas Supreme Court and the legislature have made clear that the term "infamous crime" includes any felony. Powers v. Bryant, 309 Ark. 568,832 S.W.2d 232 (1992); A.C.A. § 16-90-112(b) ("Every person convicted of bribery or felony shall be excluded from every office of trust or profit and from the right of suffrage in this state."). The constitutional provision also has repeatedly been applied to municipal offices. See,e.g., Powers, 309 Ark. 568; May v. Edwards, 258 Ark. 871, 529 S.W.2d 647
(1975). Section 16-90-112 of the Arkansas Code further provides that "[e]very person convicted of bribery or felony shall be excluded from every office of public trust or profit and from the right of suffrage in this state." However, as the court acknowledged in Powers, supra at 571-72, an expungement of a felony conviction is sufficient to restore eligibility.
The principles set forth in the preceding paragraph are reflected in A.C.A. § 7-6-102 (Repl. 2000), which sets forth the requirement of timely filing a political practices pledge of the sort referenced in your request. The statute provides in pertinent part:
* * *
 (b) All political practices pledge forms for state or district offices and county, municipal, or township offices shall be required to contain the following additional pledge:
 "I hereby certify that I have never been convicted of a felony in Arkansas or in any other jurisdiction outside of Arkansas."
 (c) Any person who has been convicted of a felony and signs the pledge stating that he has not been convicted of a felony shall be guilty of a Class D felony.[1]
 (d) For purposes of this section, a person shall be qualified to be a candidate for a state, district, county, municipal, and township office and may certify that he has never been convicted of a felony if his record was expunged in accordance with §§ 16-93-301—16-93-303, or a similar expunction statute in another state, provided, the candidate presents a certificate of expunction from the court that convicted the prospective candidate.
Under the facts as you have recited them, Candidate A was a convicted felon in March when he filed his political practices pledge attesting that he was not, but he obtained an order of expungement shortly prior to the election in which he defeated Incumbent B. At issue, then, is whether Candidate A's action in meeting the conditions for eligibility prior to the election might somehow cure the fact that he was clearly ineligible at the time he filed to run.
In my opinion, despite his lack of qualifications at the time he filed, Candidate A was in all likelihood "eligible" to run for the office, if by "eligible" you mean "properly included on the ballot." As a general proposition, if a prospective candidate files for the position and meets all of the filing requirements, the county board of election commissioners will not have the authority to declare him ineligible or to remove his name from the ballot. See generally State v. Craighead CountyBoard of Election Commissioners, 300 Ark. 405, 779 S.W.2d 169 (1989) (stating that such boards' actions are ministerial only, and that they "[d]o not have the authority to declare a candidate ineligible and remove his name from the ballot when there is a dispute concerning the facts or the law."). Accord Carroll v. Schneider, 211 Ark. 538, 540,201 S.W.2d 221 (1947) ("The duties of the Election Commissioners are ministerial and not judicial. They have the power to determine whether a prima facie showing of a sufficient petition has been made, but they have no other function."); see also Ark. Ops. Att'y Gen. Nos. 2002-270 and 2002-052 (generally discussing these ministerial restrictions). The court inCraighead County concluded that mandamus coupled with a declaratory judgment action is the proper legal proceeding to challenge a candidate's eligibility and to seek removal of the candidate from the ballot. Id. at 412.
At the time of the election, Candidate A reportedly met the statutory requirement of timely filing a political practices pledge. Although the issue is ultimately one of fact, I will presume for purposes of discussion that his filing was in all other respects compliant with formal filing requirements. Assuming these facts, I believe the election commission was correct in listing Candidate A's name on the ballot, subject only to potential judicial challenge. See Stillinger v. Rector,253 Ark. 982, 987, 490 S.W.2d 109 (1973) ("[I]t is the timely filing of the pledge that qualifies the candidate to have his name on the ballot. . . .").
Question 2: If Candidate A was not eligible to run as a candidate foroffice, what procedure is used and who is the proper party to bring anaction against him to have him declared ineligible?
As reflected in my response to your previous question, under the described facts, I believe Candidate A was properly listed on the ballot. Moreover, by the time of the election, he had reportedly obtained an expungement of his felony conviction, thus rendering him "eligible" to run insofar as he then complied with the constitutional directives of Ark. Const. art. 5, § 9 as interpreted by the Supreme Court.
I gather your primary concern is how one might go about challenging Candidate A's election based solely on the fact that he misrepresented his status when he filed to run. For purposes of my discussion here, I will assume that Candidate A has not been prosecuted and convicted of felony misrepresentation pursuant to A.C.A. § 7-6-102(c) — events whose consequences you invite me to address in response to your third question. I will assume that your concern in posing your current question is solely to determine who might initiate a civil ouster action to remove Candidate A from office and how the plaintiff in any such action should proceed.
As an initial matter, I should note that anyone seeking to void the election would face a daunting evidentiary burden. In Alexander v.Davis, 346 Ark. 310, 316, 58 S.W.3d 340 (2001), the Arkansas Supreme Court echoed with approval the following admonition regarding a court's power to void an election based on election irregularities:
 "Upon the other hand, it devolves upon the courts not to press this principle too far, nor apply it lightly to slight indications of fraud, violence or intimidation. Its application, indeed, is a matter of the greatest and most anxious responsibility, inasmuch as it involves, necessarily, the disfranchisement, in the particular election, of all the honest voters of the township. The wrong should appear to have been clear and flagrant, and in its nature diffusive in its influences, calculated to effect more than can be traced, and sufficiently potent to render the result really uncertain. If it be such, it defeats a free election, and every honest voter and intimidated or deceived voter is aggrieved thereby. It is his interest to sacrifice his own vote to right the evil. If it be not so general and serious, the court cannot safely proceed beyond the exclusion of particular illegal votes, or the supply of particular legal votes rejected." (Emphasis added.)
(Quoting Patton v. Coates, 41 Ark. 111, 126 (1888)). The court further quoted with approval the following from Henard v. St. Francis ElectionCommission, 301 Ark. 459, 783 S.W.2d 598 (1996):
 The failure to comply with the letter of the law of election officers, especially in matters over which the voter has no control, and in which no fraud is perpetrated, does not as a general rule render an election void, unless the statute expressly makes it so. Allen v. Ranklin, 269 Ark. 517, 521, 602 S.W.2d 673, 675 (1980) (quoting Goggin v. Ratchford, 217 Ark. 180, 229 S.W.2d 130 (1950). None of the improprieties alleged by appellants appear to have affected the outcome of this election.
346 Ark. at 316. However one characterizes Candidate A's purported conduct, given the fact that he obtained an expungement before the election, I strongly doubt any misrepresentation he made in filing could be characterized as "sufficiently potent to render the result really uncertain," which is the standard required to void an election underDavis. Id.
In Stillinger v. Rector, 253 Ark. 982, 986-87, 490 S.W.2d 109 (1973), the supreme court made clear that post-election challenges should be reviewed under a different standard than those filed before the voters have spoken:
 In Wright [v. Sullivan, 229 Ark. 378, 380, 314 S.W.2d 700 (1958)], we affirmed the judgment of the trial court holding that the filing of the pledge before the statutory deadline was mandatory and, in doing so, we said:
 "The appellant also asks us to hold that the filing of the pledge two days late amounted to a substantial compliance with the statute. This position might be well taken if no objection has been raised until after the election, for then the requirement could be regarded as directory; but we have often held that the provisions of the election laws are mandatory if enforcement is sought before the election."
 On their cross-appeal the defendant-appellees contend that their own failure to file the political practice pledges within the time prescribed by law is nonprejudicial to the appellants for the reason that the appellants' names also should have been barred from the ballot because of the fact that they filed political practice pledges stating that they were familiar with the political practice Act while it was demonstrated that in fact they were not.
 We are of the opinion that this contention is without merit for it is the timely filing of the pledge that qualifies the candidate to have his name on the ballot rather than the extent of his true familiarity with the provisions of the Act.
This passage is instructive in several respects. First, it suggests that a misrepresentation in a political practices pledge might not in itself disqualify a candidate for office. Second, it makes clear that strict compliance with the law regarding the filing of political practices pledges is "mandatory" only prior to the election, whereas this law is only "directory" following the election.
Although the term "mandatory" is self-explanatory, the term "directory" bears some discussion. In Horton v. Gillespie, 170 Ark. 107, 124,279 S.W. 1020 (1926), the court quoted with approval the following definition:
 In Sonfield v. Thompson, 42 Ark. 46, Mr. Justice EAKIN, speaking for the court, said: "The definition of a directory, as distinct from a mandatory, provision in a statute is that it enjoins something which it is the duty of the officer or person to perform, and for willful neglect of which he may be held liable in damages to any one injured, but the failure to do which does not have the effect of invalidating the act." There are very numerous decisions of this court defining this distinction. It has generally been held that statutes prescribing the method of discharging duties by public officers are directory unless expressly or by necessary implication made mandatory. [Citations omitted.]
See Davis, 346 Ark. at 314 (2001) (declaring untimely objections to candidates' qualifications when complaint for mandamus and declaratory judgment was not filed until after election); Standridge v. Priest,334 Ark. 568, 572, 976 S.W.2d 388 (1998) (same).
In Wallace v. Kansas City Southern Railway Co., 169 Ark. 905, 907,279 S.W. 1 (1925), the court further quoted with approval the following fromHogins v. Bullock, 92 Ark. 67, 70 (1909), in turn quoting Jones v.State, 55 N.E. 229, 233 (Ind. 1899):
 All provisions of the election law are mandatory if enforcement is sought before election in a direct proceeding for that purpose; but after election all should be held directory only, in support of the result, unless of a character to the effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void.
More recently, the court has defined this distinction as follows:
 This court has consistently held that in determining whether a statute's provisions are mandatory or merely directory, we adhere to the principle that those things which are of the essence of the thing to be done are mandatory, while those not of the essence are directory only.
Crawford Lewis v. Boatmen's Trust Co., 338 Ark. 679, 690, 1 S.W.3d 417
(1999) (citations omitted).
Applying these principles to the facts as you have stated them, I believe Incumbent B would probably not succeed in challenging Candidate A's election based solely on the fact that Candidate A was ineligible at the time he filed to run for the office. Had he posed his challenge before the election, Incumbent B might well have succeeded in keeping Candidate A's name off the ballot, since Candidate A failed to fulfill the "mandatory" statutory requirement of obtaining and producing a record of expungement within the statutory time frame — i.e., prior to the filing deadline. However, pursuant to the authorities recited above, following the election, the statutory requirements became purely directory, meaning that Candidate A's election could not be successfully challenged based solely on his failure to comply with statutory formalities unless that failure somehow tainted the vote or the legislature expressly directed that it necessarily voided the election. In my opinion, given that Candidate A's felony conviction was expunged at the time of his election, a reviewing court would probably not conclude that the election was tainted to a point that would warrant ousting Candidate A from his office. Moreover, the legislature has never declared that filing a false political practices pledge would warrant ousting a successful candidate who was not first convicted for the deception. See response to question 3 below.
I believe this situation is in may respects similar to one addressed inBaker v. Jacobs, 303 Ark. 460, 462, 798 S.W.2d 63 (1990), in which the court observed:
 This court has repeatedly recognized that the provisions of elections laws are mandatory if enforcement is sought before the election and directory if not raised until after the election. Donn v. McCuen, 303 Ark. 415, 797 S.W.2d 455 (1990); Stillinger v. Rector, 253 Ark. 982, 490 S.W.2d 109 (1973); Wright v. Sullivan, 229 Ark. 378, 314 S.W.2d 700
(1958). Here, appellants failed to commence their action until September 1990, more than three months after the primary election (and more than five months after the filing deadline for candidates). Accordingly, any filing requirements for party candidates became directory rather than mandatory after the primary election. At this late date, those candidates having failed to file a party loyalty oath (or political practice pledges) cannot be removed as a party nominee in the forthcoming General Election.
Accord Ark. Op. Att'y Gen. No. 88-041 (political practices pledge requirement is only directory, not mandatory, if an objection is filed after the election).
Having voiced my reservations regarding any direct civil action to oust Candidate A, I will note that the election might in theory be challenged in various ways. First, the Attorney General is authorized by statute to challenge an officeholder's election under Arkansas' usurpation statute, A.C.A. § 16-118-105, although it is doubtful whether anyone holding this office would elect to do so under the circumstances you have described.See Campbell v. State, 300 Ark. 570, 781 S.W.2d 14 (1989); Charisse v.Eldred, 252 Ark. 101, 477 S.W.2d 480 (1972). Alternatively, the Attorney General is authorized to bring an action in circuit court seeking the ancient common-law remedy of quo warranto, which empowers the court to remove an official wrongfully holding office. See Wills, supra at 263-64 (discussing the availability of this remedy). Finally, an aggrieved taxpayer might file an illegal exaction lawsuit pursuant to Ark. Const. art. 16, § 13 either to protect revenue wrongfully diverted to the officeholder in the form of salary or to obtain a declaration that the officeholder is ineligible. See, e.g., Jones v. Clark, 644 S.W.2d 257
(1983); White v. Hankins, 637 S.W.2d 603 (1982); Martindale v. Honey,533 S.W.2d 198 (1976); see also Wills, supra at 264-66 (generally discussing this remedy). Again, given the described circumstances, it is doubtful whether the plaintiff would prevail in any such action.
Question 3: If Candidate A is charged and found guilty of violatingA.C.A. § 7-6-102, what procedure must then be used to remove him fromoffice?
As previously noted, A.C.A. § 7-6-102(c) declares it a Class D felony for anyone to falsely claim in a political practices pledge that he has never been "convicted" of a felony. If Candidate A were "convicted" of a felony violation of Section 7-6-102(c), I believe he would be ineligible to serve pursuant to Ark. Const. art. 5, § 9 and A.C.A. § 16-90-112, which prohibit convicted felons from serving in public office.
With respect to the procedure for challenging Candidate A's election, I do not believe the city council could simply declare the office vacant. The Arkansas Supreme Court addressed this possibility in two cases that dealt with the North Little Rock City Council's replacement of an alderman, May, who had been convicted of performing an abortion. May sued to be reinstated, lost in the trial court and failed to appeal the decision. See procedural summary in May v. Edwards, 255 Ark. 1041, 1042,505 S.W.2d 13 (1974) [May I]. May's conviction for performing the abortion was subsequently reversed and his criminal case remanded for a new trial. May v. State, 254 Ark. 194, 492 S.W.2d 888 (1973). Based on this development, May again filed a civil action to be reinstated, citing the reversal as a new basis. The circuit court dismissed his complaint, leading to the appellate decision in May I. In the course of affirming the judgment, the supreme court offered the following analysis:
 The North Little Rock Council, acting upon the premise that a vacancy existed, proceeded to elect an alderman. Apparently the only applicable statute is Ark. Stat. Ann. 19-1026 (Repl 1968).[2] That statute provides that whenever a vacancy shall occur, by any reason, in the office of alderman in a city of the first class, the council shall elect an alderman to serve for the unexpired term. We take this statute to govern in this case, which means that Edwards was elected for May's unexpired term and that he will serve for that term, unless unforeseen events should earlier end his tenure.
255 Ark. at 1044-45.
Read in isolation, this passage might suggest that the supreme court accepts the premise that an alderman's conviction of a felony automatically creates a vacancy to be filled by majority vote of the city council. However, this conclusion would be mistaken. The court in May I repeatedly stressed that res judicata required it to accept as true the proposition that a vacancy existed that was properly filled by the city council, leaving at issue only the question of whether May was entitled to reinstatement based upon the reversal of his conviction. Id. at 1042, 1048. In May v. Edwards, 258 Ark. 871, 876, 529 S.W.2d 647 (1975) [May
II], the court summarized May I as holding only "that a reversal of a conviction did not restore the right of the person convicted to the office, assuming that there was a vacancy because of the conviction." With respect to the issue of vacancy, which was squarely at issue in May
II, the court further observed:
 The reason one who has been convicted of an infamous crime is prevented from taking office is because he is thereby rendered ineligible just as he would be if he did not possess other qualifications required by law. State v. Irby, [190 Ark. 786, 81 S.W.2d 419 (1935)]. It is quite a different matter to consider the effect of ineligibility upon an incumbent. We have said that an office does not ipso facto become vacant when a condition of ineligibility of the incumbent arises after he takes office, if he was eligible when he took office, and the subsequent ineligibility merely affords grounds for removal. Stafford v. Cook, 159 Ark. 438, 252 S.W. 597.
* * *
 In the absence of legislation providing for suspension or removal or authorizing one or the other by action of some officer, agency or tribunal, [Ark. Const. art. 5, § 9] should not be construed to operate as an automatic ouster of an incumbent merely because he has been found guilty of an infamous crime and sentenced when that sentence is not and does not become final. The disqualification is not a part of the punishment for the crime. State v. Irby, supra. It is a collateral effect, not flowing from the offense, but resulting to the offender by reason of the constitutional provision. Arnett v. Stumbo, 287 Ky. 433, 153 S.W.2d 889, 135 ALR 1488 (1941).
258 Ark. at 876, 877; accord, Looper v. Thrash, 334 Ark. 212, 220,972 S.W.2d 250 (1998).
In response to your specific question, then, I do not believe the city council would have any authority to remove Candidate A.[3] As my predecessor noted in Ark. Op. Att'y Gen. No. 96-026:
 Where no statute expressly provides that a vacancy is created upon an incumbent's becoming ineligible to hold an office, the mere existence of the ineligibility does not create a vacancy if the incumbent was eligible to hold the office upon assuming it. See Stafford v. Cook, 159 Ark. 438, 252 S.W. 597 (1923); see also May v. Edwards, 258 Ark. 871, 529 S.W.2d 647 (1975). In such a case, the incumbent becomes a de facto officer, and a vacancy may be created by the officer's abandonment of the office, although a clear intention to abandon must be shown. City of Berryville v. Binam, 222 Ark. 962, 264 S.W.2d 421
(1954) and State v. Green, 206 Ark. 361, 175 S.W.2d 575 (1944). The official acts of a de facto officer are valid. Appleby v. Belden Corp., 22 Ark. App. 243, 738 S.W.2d 807 (1987). A de facto officer who does not resign or abandon the office may be removed in the manner provided by law.
In my opinion, the "manner provided by law" in the event Candidate A were convicted of felony misrepresentation would be any of the three ways discussed in my response to your previous question — viz., by an action under the usurpation statute, A.C.A. § 7-6-102, by a quo warranto action brought by this office, or by an illegal exaction lawsuit brought by an aggrieved taxpayer pursuant to Ark. Const. art. 16, § 13.[4]
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] This statutory provision is consistent with Ark. Const. art. 3, §6, which provides that "[a]ny persons who shall be convicted of fraud, bribery or other willful and corrupt violation of any election law of this State shall be adjudged guilty of a felony, and disqualified from holding any office of trust or profit in this State." As one commentator has remarked of this constitutional directive:
 The language of this provision may only apply to election law violations, and would thus have no applicability to a conviction not involving such charges. The inclusion of the word "other" in referring to "other . . . violations of . . . election law," appears to indicate its limitation to election offenses even though "fraud" and "bribery" are specifically enumerated separately.
Wills, Constitutional Crisis: Can the Governor (or Other StateOfficeholder) Be Removed From Office in a Court Action After BeingConvicted of a Felony? 50 Ark. L.R. 221, 229 (1997).
[2] The current version of this statute is A.C.A. § 14-43-412 (Repl. 1998), which provides:
 (a) In case any office of an elected officer, except aldermen of the ward, shall become vacant before the expiration of the regular term, then the vacancy shall be filled by the city council until a successor is duly elected and qualified.
 (b) The successor shall be elected for the unexpired term at the first annual election that occurs after the vacancy shall have happened.
[3] My conclusion would be different if your question related to a quorum court membership at the level of county government. As I discussed in detail in Ark. Op. Att'y Gen. No. 2002-316, A.C.A. § 14-14-1308(8) expressly states that conviction of a felony constitutes a "condition of vacancy" in a quorum court position. No comparable statute applies to city government.
[4] With respect to the latter alternative, I should note the following from Wills, supra at 266:
 It is difficult . . . to reconcile Arkansas case law granting standing to taxpayers in circuit court to have an officeholder declared ineligible with cases which hold that an ouster action can only be brought against a state officer by the attorney general or a person entitled to the office. If an action for a declaratory judgment is instituted by a taxpayer in circuit court, the apparent relief is a judgment declaring the officeholder ineligible to hold the office, which may for practical purposes have the same effect as an ouster action. One can only assume the discrepancy depends upon the subtle distinctions in the remedies requested and not on some fallibility of the various courts adopting these decisions. The Arkansas Supreme Court, however, has granted taxpayers such standing more than once.
(Footnotes omitted.)